UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AGUDATH ISRAEL OF AMERICA, AGUDATH ISRAEL OF
KEW GARDEN HILLS, AGUDATH ISRAEL OF MADISON,
AGUDATH ISRAEL OF BAYSWATER, RABBI YISROEL
REISMAN, RABBI MENACHEM FEIFER, and STEVEN
SAPHIRSTEIN,

                                              Plaintiffs,      Civil Action No. 1:20-cv-4834

            vs

ANDREW M. CUOMO, Governor of the State of New York, in
his official capacity,

                                              Defendant.

## COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF

Plaintiffs, by and through their undersigned counsel Troutman Pepper Hamilton Sanders

LLP, respectfully allege as follows:

## PRELIMINARY STATEMENT

1.      Orthodox Jews celebrate three holidays on October 9, 10, and 11, respectively.

These holidays each have special prayers and rituals that are incorporated into worship services.

2.      Orthodox Jews will gather at their synagogues for collective prayer, Torah readings,

remembrances of deceased loved ones, and other rituals in observance of Hoshanah Rabbah,

Shmini Atzeres, and Simchas Torah.

3.      Forty-eight hours before the onset of these holidays, Defendant Governor Cuomo

issued an Executive Order that singles out and discriminates against all houses of worship—and

synagogues in particular—by imposing occupancy and gathering restrictions that make it

impossible for Orthodox Jews to comply with both their religious obligations and the Order.

4.      In doing so, Defendant explicitly targeted the Orthodox Jewish community, declaring that if the "orthodox community" does not agree with his rules "the state will take action."  *See* Professor Josh Blackman, *New York Governor Cuomo: "I'm Going to Say to the Orthodox Community Tomorrow If You Don't Agree Then We Will Have to Close Down Your Religious Institutions*," The Volokh Conspiracy (Oct. 6, 2020) https://reason.com/2020/10/06/new-york-governor-cuomo-im-going-to-say-to-the-orthodox-community-tomorrow-if-you-dont-agree-then-we-will-have-to-close-down-your-religious-institutions/.

5.      Defendant's Executive Order and the restrictions it contains will disrupt the religious observance of tens of thousands of Orthodox Jews in New York State, depriving them of their religious worship and holiday observance.  The Executive Order requires enforcement of its restrictions to begin on Friday, October 9, which is Hoshanah Rabbah, the first of these three holidays.

6.      Defendant has imposed these onerous and discriminatory new restrictions despite the fact that even he concedes he has not enforced the existing restrictions on houses of worship that already impose capacity limits and health requirements.  Plaintiffs have *completely* complied with these rules, and Defendant does not contend otherwise.

7.      Defendant's Executive Order violates Plaintiffs' constitutional rights under the Free Exercise Clause of the First Amendment in two separate ways, both independently sufficient to justify the temporary restraining order and all other equitable relief that they are requesting.

8.      First, Defendant's restrictions are facially discriminatory toward religious practices when compared to similar secular activities.

9.      Second, Defendant's explicit targeting of religious institutions and communities for these restrictions is a punitive attempt to infringe upon Plaintiffs' religious services *because of* their religious nature.

10.     Plaintiffs will suffer imminent, irreparable harm because of Defendant's actions. By depriving Plaintiffs and their congregants of the critical religious worship and practices associated with these upcoming holidays, Defendant has trampled on their constitutional right to the Free Exercise of Religion, an injury that cannot be remedied with a later money judgment.

11.     This action therefore seeks immediate judicial relief from Defendant's discriminatory restrictions by way of a temporary restraining order, followed by a preliminary and permanent injunction and a declaratory judgment that the Executive Order is unconstitutional and void because it deprives Plaintiffs of their constitutional rights.

## PARTIES, JURISDICTION, AND VENUE

12.     Plaintiff Agudath Israel of America, founded in 1922, is a national grassroots Orthodox Jewish organization.  Among its other functions and activities, Agudath Israel articulates and advances the position of the Orthodox Jewish community on a broad range of legal issues affecting religious rights and liberties in the United States.  Agudath Israel regularly intervenes at all levels of government to advocate and protect the interests of the Orthodox Jewish community in the United States in particular and religious liberty in general.  Agudath Israel has a large number of Agudath-Israel affiliated synagogues throughout the country, with close to 70 in New York State, and advocates for synagogues whenever their rights are threatened.  Agudath Israel of America's principal place of business is located at 42 Broadway, 14th Floor, New York, NY 10004.

13. Plaintiff Agudath Israel of Kew Garden Hills is an Orthodox Jewish Synagogue located at 14737 70th Rd., Flushing, NY 11367.

14. Plaintiff Agudath Israel of Madison is an Orthodox Jewish Synagogue located at 2122 Ave. S, Brooklyn, NY 11229.

15. Plaintiff Agudath Israel of Bayswater is an Orthodox Jewish Synagogue located at 2422 Bayswater Ave., Far Rockaway, NY 11691.

16. Plaintiff Rabbi Yisroel Reisman is the Rabbi at Agudath Israel of Madison, located at 2122 Ave. S, Brooklyn, NY 11229. Rabbi Reisman resides in Brooklyn, New York.

17. Plaintiff Rabbi Menachem Feifer is the Rabbi at Agudath Israel of Bayswater, located at 2422 Bayswater Ave., Far Rockaway, NY 11691.  Rabbi Feifer is a Resident of Far Rockaway, New York.

18. Plaintiff Steven Saphirstein is the Secretary of Agudath Israel of Kew Garden Hills, located at 14737 70th Rd., Flushing, NY 11367.  Mr. Saphirstein is a resident of Queens, New York.

19. Defendant Governor Andrew M. Cuomo is the Governor of the State of New York and is acting in his official capacity at all times relevant to the allegations herein.  Defendant's principal place of business is located at the State Capitol Building, Albany, New York.

20. This action raises federal questions under the First Amendment to the United States Constitution and under federal law, 28 U.S.C. §§ 2201 and 2202, as well as 42 U.S.C. §§ 1983 and 1988.

21. This Court has jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

22.     This Court has the authority to grant the requested injunctive relief under 28 U.S.C. § 1343(3), the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Plaintiffs' prayer for costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

23.     Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims herein arise in this District.

## BACKGROUND

### New York State Restrictions

24.     To combat the "transmission of COVID-19" and the "threat that COVID-19 poses to the health and welfare" of the State of New York, Defendant issued Executive Order No. 202 on March 7, 2020, declaring a disaster emergency in New York.[1]

25.     In the following months, Defendant issued dozens of orders imposing business closures, in-person gathering restrictions, and other requirements throughout the State.[2]

26.     In May of this year, the State announced that it would allow a phased, regional approach for non-essential businesses to reopen and other conduct to resume, based on regions satisfying certain health-related metrics specified by the New York Department of Health.[3]

27.     Pursuant to that regional plan, Defendant has issued orders exempting non-essential businesses and other conduct from his gathering and closure restrictions in certain regions of the State, provided that such entities operate subject to Department of Health guidance.

---

[1] Available at https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.pdf.
[2] *See generally* https://www.governor.ny.gov/keywords/executive-order.
[3] *See, e.g.*, https://forward.ny.gov/.

28.     Among other things, the Department of Health guidance requires such businesses and other conduct to adhere to certain health and safety protocols, which often include capacity limitations on maximum occupancy.

29.     All regions of the State currently are in the final phase (Phase 4) of that plan.[4]

30.     For religious services in Phase 4,[5] the State's guidelines impose a restriction of "no more than 33% of the maximum occupancy for a particular area for services occurring indoor; or no more than 50 people for services occurring outdoors."

31.     In *Soos v. Cuomo*, ___ F. Supp. 3d ___, 2020 U.S. Dist. LEXIS 111808 (N.D.N.Y. June 26, 2020), the district court enjoined Defendant's previous attempt to impose a 25% indoor-capacity limitation on houses of worship, concluding that this limitation imposed more restrictive capacity limits than on comparable secular activity that allowed 50% capacity, such as "offices, retail stores that are not inside of shopping malls, [ ] salons," and restaurants, and restrained Defendant from enforcing such limitations on houses of worship greater than those imposed for such comparable secular activity.  *Id.* at *29–30, 25.

32.     Despite the extensive existing restrictions on houses of worship and worship services, Defendant has publicly conceded that there has been no enforcement of those requirements against persons who have not voluntarily complied with them.

**Defendant's "Redlining" Initiative and Executive Order 202.68**

33.     Rather than enforce these existing rules—which can both be effective at stopping the transmission of COVID-19 and allow for religious services and safety to coexist—earlier this

---

[4] *See* https://forward.ny.gov/phase-four-industries ("All regions of the state have entered Phase 4 of reopening.").
[5] Available at https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/ReligiousandFuneralServices SummaryGuidance.pdf.

week Defendant imposed punitive new restrictions that create conflict between religious services and government mandates.

34.     On October 5, Defendant held a press conference to announce the new restrictions he intended to impose.[6]  At this press conference, Defendant explained that his new restrictions are designed to target religious institutions.

35.     Defendant stated that "[r]eligious institutions" and "mass gatherings," can spread COVID-19. Further, Defendant singled out "[r]eligious institutions" as "the greatest potential" threat, declaring that "[w]e know religious institutions have been a problem."

36.     During this press conference, Defendant displayed pictures of Orthodox Jews, including a fourteen-year-old photo that was described as "recent."[7]



37.     Defendant also stated that he planned to "meet with members of the ultra-Orthodox community tomorrow," and threatened that "we'll close the [religious] institutions down" if "you do not agree to enforce the rules."

---

[6] Available at https://www.governor.ny.gov/news/video-audio-photos-rush-transcript-governor-cuomo-updates-new-yorkers-states-progress-during-1.
[7] Available at https://www.flickr.com/photos/governorandrewcuomo/albums/72157716268567076.

38.     The following day, on October 6, 2020, Defendant announced at a press conference a "new cluster action initiative," intended to curb the transmission of COVID-19.[8]

39.     This new initiative imposes selective and discriminatory gathering restrictions on houses of worship, which are given their own category of restriction.

40.     Defendant admitted that he intended his restrictions to be "most impactful on houses of worship" because "[t]he problem is mass gatherings and houses of worship."

41.     To that end, the initiative declares COVID-19 "high density" zones by neighborhood, and assigns such zones with a color—red, orange, or yellow—each of which has their own set of COVID-19 restrictions.

42.     Defendant also released a chart[9] explaining the particular restrictions applicable to each zone, and noting that the "cluster action initiative . . . divide[s] clusters and the areas around them into three categories with successively higher restrictions within each one":

---

[8] Available at https://www.governor.ny.gov/news/video-audio-photos-rush-transcript-governor-cuomo-announces-new-cluster-action-initiative.
[9] *See* https://www.flickr.com/photos/governorandrewcuomo/albums/72157716284149688.

| Type of Activity | RED | ORANGE | YELLOW |
|---|---|---|---|
| Worship | 25% capacity 10 people maximum | 33% capacity 25 people maximum | 50% capacity |
| Mass Gathering | Prohibited | 10 people maximum, Indoor and outdoor | 25 people maximum, Indoors and outdoors |
| Businesses | Only essential businesses open | Closing high-risk non-essential business (gyms, personal care, etc.) | Open |
| Dining | Takeout only | Outdoor dining only, 4 person maximum per table | Indoor and outdoor dining, 4 person maximum per table |
| Schools | CLOSED Remote-only | | Open Mandatory weekly testing of students and teachers/staff for in-person settings. DOH will set percent by Friday. |

43.     In areas that the Defendant decides are in the "Red Zone – Cluster Itself," Defendant restricts houses of worship to a 10-person maximum limit.

44.     "Essential businesses" in the red zone, however, are exempted from the restrictions. The Executive Order, released later that night, also permits "essential" gatherings.  No definition of essential gatherings has ever been provided.

45.     In areas that Defendant determines are in the "Orange Zone – Warning Zone," Defendant restricts houses of worship to a 25-person maximum limit.

46.     In this zone, Defendant exempts most businesses from the restrictions, allowing them to operate without any specified capacity limitation, and "[c]losing" only "high-risk non-essential businesses, such as gyms and personal care."

47.     Finally, in areas Defendant determines are in the "Yellow Zone – Precautionary Zone," Defendant restricts houses of worship to 50% capacity.

48.     Defendant exempts all businesses, including restaurants for indoor and outdoor dining service, and schools, from these "Yellow Zone" restrictions, allowing them to remain

"[o]pen" without any specified capacity limitation, except for limiting each restaurant table to a maximum of four persons.

49.     To enforce these new restrictions, Defendant announced that sponsors of worship services in violation of his rules will be subject to fines of $15,000.

50.     Consistent with these announcements, Defendant issued Executive Order 202.68 ("EO 202.68") on October 6.[10]  This Order directs the Department of Health to adopt the "most severe" mitigation measures in "red zones," precluding all "[n]on-essential gatherings," prohibiting all non-essential employees from in-person work, and specifically "subject[ing]" all houses of worship "to a capacity limit of 10 people." *Id.* at 2.

51.     EO 202.68 mandates that "moderate severity warning areas, or 'orange zones,'" are allowed non-essential gatherings of 10 people or less, permits non-essential businesses—except for gyms, fitness centers or classes, barbers, hair salons, spas, tattoo or piercing parlors, nail technicians and nail salons, cosmetologists, estheticians, the provision of laser hair removal and electrolysis, and all other personal care services—to return to in-person work, and restricts houses of worship "to a maximum capacity limit of . . . 25 people." *Id.*

52.     Finally, in "precautionary" or "yellow zones," non-essential gatherings are limited to 25 or fewer people, "houses of worship shall be subject to a capacity limit of 50% of its maximum occupancy and shall adhere to Department of Health guidance," whereas restaurants and taverns are permitted indoor and outdoor seating for all parties of four or less, and children can return to in-person school. *Id.*

53.     EO 202.68 also announced that it "shall be enforced no later than Friday, October 9, 2020." *Id.*

---

[10] Available at https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO202.68.pdf.

54.     At his October 6 press conference, Defendant also declared that "[t]he state is going to take over the enforcement oversight in all the hotspot clusters."

### Jewish Houses of Worship Are A Vital Component of Jewish Religious Practice

55.     Synagogues are a necessary and critical component of Jewish life.

56.     Plaintiff synagogues and dozens or hundreds more just like them each serve several hundred men and woman every week and have legal occupancy capacities that permit them to have several hundred worshippers in the building at any one time.

57.     Plaintiff Agudath Israel of Kew Garden Hills holds daily worship services, serving over 150 men and women each week.  It is located in a geographic area affected by Defendant's gathering restrictions on houses of worship.  Without such restrictions it has a legal capacity of 400 persons in its main sanctuary.

58.     Plaintiff Agudath Israel of Madison holds worship services, conducted every day, serving over 300 men and women every week.  It is located in a geographic area affected by Defendant's gathering restrictions on houses of worship.  Without such restrictions it has a legal capacity of 186 persons in its main sanctuary, with an additional capacity of more than 145 persons each in its lower and upper levels.

59.     Plaintiff Agudath Israel of Bayswater holds daily worship services and serves over 150 men and women every week.  It is located in a geographic area affected by Defendant's gathering restrictions on houses of worship.  Without such restrictions it has a legal capacity of 250 persons in its main sanctuary.

60.     The congregants' spiritual connection to the synagogue and its community is intense.  The spiritual role of the synagogue and its community is especially critical during these unprecedented and challenging times.

61.     A high point of this communal life takes place during the current holiday period, which began nearly three weeks ago with Rosh Hashona, the Jewish New Year.

62.     The holiday period culminates with three special days on the Jewish calendar. These days are known as Hoshanah Rabbah, Shmini Atzeres, and Simchas Torah, and this year they are observed on October 9, October 10, and October 11, respectively.

63.     Hoshanah Rabbah, observed on October 9, marks the conclusion of the Days of Judgment that began with Rosh Hashona.  There are special, additional services and rituals that are required on Hoshanah Rabbah, including reading from a Torah scroll, seven additional prayers, and the traditional beating of a willow branch in the synagogue.  This tradition dates back 2,000 years, to the times of the Temple.  Religious services on Hoshanah Rabbah take at least ninety to one hundred and twenty minutes.

64.     Saturday, October 10, is the holiday of Shmini Atzeres.  Among the special features of the holiday is the Yizkor service, which is the Prayer for Departed Relatives. This prayer is only recited four times a year and, after this Saturday, will not be recited again until Passover in April. These additional prayers by men and women alike are especially emotional, led by a Rabbi, require approximately 15 additional minutes of service, and are *only* offered in group prayer.

65.     Shmini Atzeres is also the only day of the year that Orthodox Jews read Ecclesiastes, which they accept as the Book of Wisdom, in shul.  In many synagogues, including that of Plaintiff Agudath Israel of Madison, Ecclesiastes is read from a parchment and requires a trained cantor.

66.     Simchas Torah, falling on October 11, is literally translated as "the Joy of the Torah," and is a celebration of the completion of the annual cycle of Torah readings.  As part of this celebration, each congregant is called to the Torah for a short reading.  Traditionally, the Rabbi

is then called to read the final portion of the Torah, after which the first portion of the Torah is read to begin the new cycle.

67.     Practitioners of Judaism observe these holidays primarily in the synagogue. Plaintiffs and their congregants understand that joining together to pray is more than a religious ceremony; it is an emotional connection to God and community.

**Executive Order 202.68 Makes It Impossible for Orthodox Jews to Conduct Services**

68.     Defendant's EO 202.68 renders it impossible for Plaintiffs' synagogues and their congregants to fulfill their religious obligations.

69.     For all synagogues in the "red zone," including Plaintiff Agudath Israel of Madison, EO 202.68 limits attendance at worship services to 10 individuals.

70.     Under these new restrictions, then, it is impossible for Plaintiffs to both comply with the State-issued restrictions on houses of worship and fulfill their religious obligations.

71.     For example, Hoshanah Rabbah services, Friday, October 9, take approximately ninety to one hundred and twenty minutes.  For a synagogue the size of Plaintiff Agudath Israel of Madison, the capacity limits would require over twenty such services on Friday morning to serve the entire congregation.  That is simply impossible.

72.     Under the existing COVID-19 capacity limitations, however, Plaintiffs use all of their various spaces and outdoor settings to divide their congregants into multiple services.

73.     Plaintiffs also cannot conduct Shmini Atzeres services, on Saturday, October 10, under the new restrictions.  The additional services on Shmini Atzeres, including Yizkor (the Prayer for Departed Relatives), add roughly fifteen minutes to the services, and are only offered in group-prayer settings.  Under the new restrictions, Plaintiffs and their congregants will suffer

the particularly devastating harm of being deprived these special prayers, which are only recited four times a year.

74.     Under the existing COVID-19 capacity limits, Plaintiffs are able to conduct such services.

75.     The new restrictions embodied in the Executive Order also make it impossible for Plaintiffs to complete all required prayers and readings for Simchas Torah, on Sunday October 11. This "Joy of the Torah" service requires individual, short Torah readings by all congregants, in addition to the regular services.  It is impossible for Plaintiffs to hold such services for all of their congregants while complying with the ten-person capacity limits.

76.     Under the existing COVID-19 capacity limits, Plaintiffs are be able to comply with their religious and civil dictates for the entirety of the holiday period.

77.     Although Defendant's EO 202.68 discriminates against *all* religions by singling out houses of worship for more restrictive treatment than similarly situated secular institutions, the order disproportionately impacts Orthodox Jewish services.

78.     Because Orthodox Jews are prohibited by their faith from engaging in vehicular travel on the Saturday Sabbath and religious holidays, they must walk to their synagogues, which are generally located within the communities where their congregants reside.

79.     Although Orthodox Jews can continue to drive outside of restricted areas to go to work or engage in other permitted activities outside of prohibited zones, the restrictions bar Orthodox Jews principally from attending religious services, as they are unable to travel to synagogues outside of their restricted zones.

80.     Without minimizing the unconstitutional impact that the Executive Order has on practitioners of other faiths, they at least retain the ability to drive to houses of worship in nearby, unrestricted zones, whereas Orthodox Jews are simply unable to do so.

81.     There are *hundreds* of synagogues in the presently delineated "restricted zones," with many tens of thousands of Orthodox Jews residing in those communities.  Therefore, the brunt of the religious burden imposed by Defendant's EO 202.68 falls upon the Orthodox Jewish community, who, alone, are totally deprived of the ability to participate in religious services.

**Jewish Houses of Worship Protect Against the Transmission of COVID-19**

82.     Plaintiffs and other Jewish houses of worship have adopted rigorous health protocols and have altered religious congregation to safeguard against the spread of COVID-19.

83.     Prior to the Executive Order, Plaintiffs have followed *all* closure, capacity limitation, social distancing, and masking requirements imposed by the State.

84.     These include the capacity limits currently imposed upon all religious activities.

85.     Plaintiffs suspended services in mid-March, and remained closed until they were granted permission to resume services around Memorial Day.

86.     Since resuming services, Plaintiffs have at all times operated in conformity with all health requirements.

87.     In addition to capacity limits and masking, Plaintiff and other synagogues have erected plexiglass barriers between those leading services and reading the Torah and others.

88.     They have also split the traditional congregational service into separate gatherings. This accommodates every congregant while ensuring that they maintain proper social distancing.

89.     Plaintiffs and other synagogues require congregants to wear masks during the entire service, and congregants have fully complied with this requirement.

90.     For the upcoming holidays, Plaintiffs have previously announced additional limitations to ensure the safety of all during these important religious services and rituals.

91.     By way of example, a principal part of the service typically has the congregation circle the synagogue together, but Plaintiffs instead have had only one individual perform that ritual, as the rest of the congregation stands in place in prayer.

92.     By implementing rigorous health and safety protocols, Plaintiffs have been able to allow their members to continue to practice their religious beliefs while still safeguarding from the spread of COVID-19.

## COUNT I

### Violation of the First Amendment to the United States Constitution
### 42 U.S.C. § 1983

93.     Plaintiffs incorporate and reallege Paragraphs 1 through 92 as if fully set forth herein.

94.     The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, forbids the States from enacting laws inhibiting the free exercise of religion. *See Wisconsin v. Yoder*, 406 U.S. 205, 213–14, 232 (1972); *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, Plaintiffs have a constitutional right to freely exercise their religious beliefs and practices by providing a religious upbringing for their children and families. *See Wisconsin v. Yoder*, 406 U.S. 205, 213–14, 232 (1972).

95.     The government violates the Free Exercise Clause when it burdens a person's religious exercise through a law that is not neutral or generally applicable, unless the government can satisfy strict scrutiny. *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 546 (1993).

96.     A law may fail the First Amendment's neutrality requirement in two ways: (1) if it the law regulates motivated conduct, but not similar secular conduct, *Cent. Rabbinical Congress of the U.S. & Can. v. NYC Dep't of Health & Mental Hygiene*, 763 F.3d 183, 195 (2d Cir. 2014), or is specifically directed at religious practice; or (2) if the government targeted the law at religiously motivated conduct for special restrictions, even if the text of the law is facially neutral, *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018); *Lukumi*, 508 U.S. at 540.

97.     EO 202.68 burdens Plaintiffs' religious beliefs by restricting the number of individuals who may gather in houses of worship, at risk of substantial financial penalties. Plaintiffs are sincere practitioners of Judaism who believe that attending religious services at the synagogue, especially on Jewish holidays, is a critical and necessary component of their religious practices and beliefs.  EO 202.68's restrictions make it impossible for Plaintiffs and their congregants and others to conduct services on Jewish holidays observed on October 9, 10, and 11, 2020, thereby infringing upon Plaintiffs' ability to comply with religious dictates.

98.     EO 202.68 is not neutral, and violates the Free Exercise Clause for two independently sufficient reasons.

99.     First, EO 202.68 is not neutral because it is *facially discriminatory*, as the restrictions in each zone expressly impose gathering restrictions on "houses of worship" and not other secular conduct.

100.    In areas designated to be in the "Yellow Zone," EO 202.68 restricts houses of worship to 50% capacity while permitting all businesses, including restaurants for indoor and outdoor dining service, and schools, to remain open (subject to Department of Health guidance). Further, the secular conduct that EO 202.68 permits to open at greater capacity than 50% similarly

constitutes gatherings of individuals for a prolonged period of time—the very characteristics of public congregation used to justify restrictions to combat the transmission of COVID-19.

101.    In areas designated to be in the "Orange Zone," EO 202.68 restricts worship services to a maximum of 25 people while closing only non-essential businesses, for which there is a higher risk associated with the transmission of the COVID-19 virus.  The "non-essential" businesses that EO 202.68 permits to open at greater capacity than 50%, which include offices and retail, among other things, similarly constitute gatherings of individuals for a prolonged period of time that should trigger the same concerns relating to the spread of COVID-19 that Defendant claims justify restrictions on houses of worship.

102.    In areas designated to be in the "Red Zone – Cluster Itself," EO 202.68 restricts houses of worship to a 10-person maximum.  These restrictions similarly facially target religious practice.  Moreover, EO 202.68 exempts all essential gatherings and businesses from such restrictions, yet it fails to define "essential" gatherings not subject to the gathering restrictions.

103.    Second, EO 202.68 is not neutral because it infringes on the religious practices of the Orthodox Jewish community because of their religious motivation.  Defendant's actions and contemporaneous statements establish this lack of neutrality.

104.    The day before issuing his restrictions, Defendant singled out houses of worship for discriminatory treatment, stating: "Religious institutions are mass gatherings and raise the greatest potential" for the spread of COVID-19, and that "[w]e know religious institutions have been a problem."  Defendant further threatened "religious institutions" and "*members of the ultra-Orthodox community*" that "[i]f you do not agree to enforce the rules, then we'll close the [religious] institutions down."

105.    Defendant's order requires enforcement of its restrictions beginning October 9—the first of the three upcoming Jewish holidays, ensuring it will be impossible for Plaintiffs to conduct services for all of their congregants.

106.    Furthermore, the brunt of Defendant's restrictions falls disparately on Orthodox Jews, who do not use vehicular travel on Sabbath or on religious holidays and thus are unable to travel to houses of worship for religious practice in other, permitted areas.

107.    Given its lack of neutrality, EO 202.68 can only survive a Free Exercise Clause challenge if it satisfies the exceptionally demanding strict-scrutiny review, which requires it to further a compelling government interest in a narrowly tailored way.

108.    Here, EO 202.68 is not narrowly tailored because it is massively underinclusive in relation to its goals: it exempts secular activity—all businesses and restaurants in counties in the Yellow Zone, and most businesses in counties in the Orange Zone, in which individuals congregate and remain in close proximity for long periods—that endangers the health and welfare of the public through the transmission of COVID-19 in a similar or greater degree than do houses of worship.

109.    EO 202.68 will cause irreparable harm to Plaintiffs absent preliminary injunctive relief.  EO 202.68 deprives Plaintiffs of their free-exercise rights during three Jewish holidays, and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 473 (1976) (plurality op.); *see also LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 426 (2d Cir. 1995).

110.    Defendant would suffer no harm if EO 202.68 were preliminarily enjoined, because Plaintiffs have guarded against the spread of COVID-19 with their own comprehensive health and safety protocols, and Plaintiffs have been fully compliant with all State and local mandates since the onset of the pandemic.

111.     Injunctive relief would further the public interest by protecting Plaintiffs'
constitutional rights and treating religious and secular conduct in comparable ways.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(a)     a temporary restraining order, followed by a preliminary and final injunction
restraining Defendant, and all those acting in concert with him, from enforcing EO 202.68;

(b)     a declaratory judgment that the enforcement of EO 202.68 is unconstitutional, both
facially and as applied to plaintiffs;

(c)     an award of costs of this litigation, including reasonable attorneys' fees, pursuant
to 42 U.S.C. § 1988 and 28 U.S.C. § 1920; and

(d)     such other and further relief as the Court may deem just and proper.

This 8th day of October, 2020.

/s/ Avi Schick
Avi Schick
avi.schick@troutman.com

TROUTMAN PEPPER HAMILTON SANDERS LLP
875 Third Avenue
New York, NY  10022
(212) 704-6000

Misha Tseytlin (NY Bar No. 4642609)
misha.tseytlin@troutman.com
*Pro Hac Vice Application Forthcoming
W. Alex Smith (GA Bar No. 532647)
alex.smith@troutman.com
*Pro Hac Vice Application Forthcoming
Sean T.H. Dutton (IL Bar No. 6319132)
sean.dutton@troutman.com
*Pro Hac Vice Application Forthcoming
Kevin M. LeRoy (WI Bar No. 1105053)
kevin.leroy@troutman.com
*Pro Hac Vice Application Forthcoming

***Attorneys for Plaintiffs***