UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AGUDATH ISRAEL OF AMERICA, AGUDATH ISRAEL OF KEW GARDEN HILLS, AGUDATH ISRAEL OF MADISON, AGUDATH ISRAEL OF BAYSWATER, RABBI YISROEL REISMAN, RABBI MENACHEM FEIFER, STEVEN SAPHIRSTEIN, <br><br> Plaintiffs, <br><br> vs. <br><br> GOVERNOR ANDREW CUOMO <br><br> Defendant. | Civil No. 1:20-cv-04834 (KAM) |

# **REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Given the press of time, Plaintiffs raise the following four brief points in response to Defendant's opposition.[1]

*First*, that Defendant chose to impose these restrictions just two days before three important Jewish holidays calls out for immediate relief in time for Plaintiffs to be able to celebrate these holidays. Defendant's brief entirely ignores the devastating burden his restrictions impose on members of the Jewish community, fails to acknowledge that he announced his order only days before these sacred religious holidays, and does not explain the timing of his order as it impacts the only religious minority singled out in his press conference. In announcing the restrictions, Defendant repeatedly singled out by name *only* the Orthodox Jewish community. That targeting of a religious minority on the eve of its holidays is reason enough to reject all of Defendant's arguments and allow Plaintiffs to celebrate their holidays this weekend as they have for over 2,000 years. *See Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719 (2018); *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 546 (1993). According to Defendant this morning, "[t]he cluster is predominantly an ultra-orthodox cluster." Carl Campanile, *Cuomo Calls COVID-19 Resurgence an 'Ultra-Orthodox' Jewish Problem*, NYPost (Oct. 9, 2020), https://nypost.com/2020/10/09/gov-cuomo-ny-covid-19-spike-an-ultra-orthodox-jewish-problem/.

Again, Defendant singled out "the ultra-Orthodox community" repeatedly, threatening to "close the [religious] institutions down" if the community "do[es] not agree to enforce the rules." Schick Decl. Ex. A at 8. Defendant openly admits that his red-lined restricted zones apply to "communities [that] have a large Orthodox population," Schick Decl. Ex. F at 8, discrimination

---

[1] Plaintiffs note that Defendant relies extensively on the declaration of Howard Zucker in his opposition. As of 12:50 pm, Defendant has neither filed nor served that declaration on Plaintiffs, depriving Plaintiffs the opportunity to review and respond to any of the assertions therein.

that is all the more blatant as Defendant has failed to identify the objective metrics that define when a neighborhood is placed into a red, orange or yellow zone that restricts religious practice.

Members of the Jewish faith already are feeling the grave effects of Defendant's last-minute restrictions. Because of Defendant's strict gathering limitations on houses of worship, synagogues must choose which congregants can participate in religious prayer and ritual under Defendant's strict limitations, which render it impossible for all congregants to participate in services. As Rabbi Eytan Feiner of the White Shul announced to his congregants late last night, Jews are "hurting beyond words" because of Defendant's restrictions, as he, like numerous others, "must inform all our dear members and *mispallelim* [worshippers] that our beloved Shul will not be available" for more than "a single Minyan of just ten (pre-authorized) people." Exhibit A, Rabbi Eytan Feiner, *Closed White Shul Closes Ahead of New Restrictions Effective Friday Morning* (Oct. 8, 2020), https://5townscentral.com/2020/10/08/closed-white-shul-closed-ahead-of-new-restrictions-effective-friday-morning/.

The singling out of the Orthodox community in announcing the restrictions also has spurned other acts of discrimination, as businesses have begun to discriminate against Orthodox Jews even outside the restricted zones. *See* Exhibit B, *THANKS CUOMO: Hasidic Jews Refused Entry at Newburgh, NY Bowling Alley* (Oct. 8, 2020), https://www.theyeshivaworld.com/news/featured/1907891/thanks-cuomo-hasidic-jews-refused-entry-at-newburgh-ny-bowling-alley.html.

*Second*, even beyond Defendant's targeting of Orthodox Jews, in particular, and contrary to the inaccurate claims in his Opposition, Def. Br. 19, Defendant's restrictions discriminate on their *face* against all religious practice by imposing certain restrictions on "houses of worship" and different rules on secular conduct. Despite admitting that mass gatherings, in general, present risks

3

to the spread of COVID-19, Defendant singled out "[r]eligious institutions" as "the greatest potential" risk and posted pictures of religious gatherings—not even from during the pandemic. Schick Decl. Ex. A at 6–7, Ex. F at 8.

Incredibly, Defendant argues that his restrictions are *more* favorable to religion than secular conduct, Def. Br. 16, but his order proves otherwise. Defendant's restrictions afford more favorable rules to schools, offices, malls, and other "*essential*" gatherings where individuals congregate and remain in close proximity for extended periods of time.[2] Pls. Br. 15–16. ***Indeed, Defendant's order fails to define the "essential gatherings" that are exempted from any limitations,*** even in a red zone where houses of worship of any size are limited to occupancy of 10. Schick. Decl. Ex. E at 2.

Defendant wrongly states in his brief that the restrictions exempt only essential **businesses**, Def. Br. 12 n.11, but the plain language of his order restricts only "***non-essential gatherings***," thereby affording Defendant carte blanche authority to allow an undefined category of gatherings in unspecified numbers of individuals if Defendant decides the gathering is "essential." Moreover, in the "Orange Zone" houses of worship are limited to 25 individuals, while offices, malls, and retail stores can open at 50% of capacity. Pls. Br. 15–16. And schools can open at 100% capacity in the "Yellow Zone"—a much more favorable rule than the 50% capacity imposed on houses of worship. Pls. Br. 15. Such permitted secular conduct that "threaten defendants' interest in slowing the spread of COVID-19 to a similar or greater degree than those of" houses of worship

---

[2] *Association of Jewish Camp Operators v. Cuomo*, 2020 U.S. Dist. LEXIS 117765 (N.D.N.Y. July 6, 2020), involved a distinguishable challenge to restrictions to overnight camps. Defendant's restrictions on their face applied equally to religious and non-religious camps, and the court decided permitted secular activity was dissimilar to overnight camps, which involve close sleeping quarters.

demonstrates that, as in *Soos*, 2020 U.S. Dist. LEXIS 111808, *29–30, Defendant's restrictions discriminate on the basis of religious practice.

*Third*, Plaintiffs wrongly argue that *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), and *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020), do not permit this Court to invalidate discriminatory restrictions on religious practice, including ones—like those here—designed to target a religious minority.

*Jacobson* did not address a Free Exercise Clause challenge at all and does not free the Court from deciding whether the statute is discriminatory against religious practice. Numerous courts considering the issue have applied traditional First Amendment scrutiny to such challenges, and a court *must* determine whether a restriction discriminates against religion. *See Roberts v. Neace*, 958 F.3d 409, 413–16 (6th Cir. 2020); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020); *Soos v. Cuomo*, 2020 U.S. Dist. LEXIS 111808, *29–30 (N.D.N.Y. June 26, 2020); *On Fire Christian Ctr. v. Fischer*, 2020 U.S. Dist. LEXIS 65924 (W.D. Ky. Apr. 11, 2020).

Nor is *South Bay* "dispositive," Def. Br. 10, as Defendant wrongly argues. The case was before the Court on a request for injunctive relief after the district court refused to enjoin the challenged conduct. 140 S. Ct. at 1613–14. As the Chief Justice emphasized in his concurring opinion, the Court's decision in *South Bay* was based upon the highly deferential approach the Supreme Court takes to district court decisions that deny a motion for a preliminary injunction: "Such a request demands a significantly higher justification than a request for a stay because, unlike a stay, an injunction does not simply suspend judicial alteration of the status quo but *grants judicial intervention that has been withheld by lower courts*." *Id.* (citation omitted) (emphasis added). The present case is the moment to which the Supreme Court said it would defer: a decision by a "lower court" *whether* to give relief.

5

Further, the discrimination here is far clearer than in *South Bay*, such that the decision by the *South Bay* district court should not guide this Court's analysis. As explained in Plaintiffs' brief and above, Defendant's actions here discriminate against religious gatherings vis-à-vis the undefined category of "essential gatherings." Pls. Br. 16; Schick Decl. Ex. E at 2. Nor was the explicit singling out of religion in imposing restrictions at issue in *South Bay*, as is present here and is discussed further below.[3]

*Finally*, Defendant's discriminatory restrictions fail strict scrutiny; indeed, they are so irrational that they would fail even *Jacobson*'s "arbitrary and oppressive" standard, if that standard applied here. Defendant has shown no criteria whatsoever for the metrics that trigger his gerrymandered zones that would even begin to prove that the restrictions are narrowly tailored. Nor has Defendant even attempted to set forth evidence that Plaintiffs' synagogues have not complied with his existing gathering and health regulations or that Plaintiffs have caused spread of COVID-19. The only evidence proves the opposite. Pls. Br. 11. Defendant's massively underinclusive restrictions favoring comparable secular activity show that less restrictive means

---

[3] Defendant also erroneously relies upon *Calvary Chapel Dayton Valley v. Sisolak*, 2020 WL 4260438 (D. Nev. June 11, 2020), but that case is inapplicable. In *Calvary Chapel*, the plaintiff challenged an order that limited in-person church services to 50 persons or less, the same capacity limitation that applied to *all* public gatherings in any indoor or outdoor spaces and movie theaters, while casinos were permitted to operate at 50% capacity. *Id.* at *1. But casinos also faced substantial government-issued restrictions and limitations "*in addition* to" the requirements of the Emergency Directive. *Id.* at *3. On this basis, the court concluded the order was "neutral and generally applicable," and did not treat secular activity more favorably than religious services. *Id.* Here, Defendant's order omits from its regulatory sphere any "[ ]essential gatherings," instead limiting only "[n]on-essential gatherings" in each of the "zones." Schick Decl. E at 2. Thus, by its very text the order permits open-ended "essential gatherings" even in areas where religious observers are severely regulated. The order never explains why it "permit[s] people who practice social distancing and good hygiene in one place but not another for similar lengths of time," *Roberts*, 958 F.3d at 416, and such a distinction disfavoring religion is plainly contrary to the First Amendment. Therefore, unlike in *Calvary Chapel*, where Nevada's officials at least arguably placed religious practice and secular activity on equal footing, Defendant's discrimination here merits this Court's entering a temporary restraining order.

are available to curb the spread of COVID-19 than an arbitrary cap on the number of protectioners allowed to attend religious services. Defendant's patent targeting religious conduct for restriction smacks of arbitrariness and oppression, which is particularly true given Defendant's admission that such restrictions purportedly are necessary because of the *government's* lack of enforcement of prior laws, reasoning that "[m]oving forward, I'm not going to pass more laws that are not enforced." Schick Decl. Ex. F at 7. Draconian shutdown measures against religious institutions cannot possibly be narrowly tailored, and are arbitrary and oppressive, where even Defendant concedes less restrictive means are available but may not have worked because of the government's (and not Plaintiffs') inaction.

This 9th day of October, 2020.

/s/ *Avi Schick*
Avi Schick
avi.schick@troutman.com

TROUTMAN PEPPER HAMILTON SANDERS LLP
875 Third Avenue
New York, NY 10022
(212) 704-6000

Misha Tseytlin (NY Bar No. 4642609)
misha.tseytlin@troutman.com
*Pro Hac Vice Application Forthcoming
W. Alex Smith (Ga. Bar No. 532647)
alex.smith@troutman.com
*Pro Hac Vice Application Forthcoming
Sean T.H. Dutton (IL Bar No. 6319132)
sean.dutton@troutman.com
*Pro Hac Vice Application Forthcoming
Kevin M. LeRoy (WI Bar No. 1105053)
kevin.leroy@troutman.com
*Pro Hac Vice Application Forthcoming

***Attorneys for Plaintiffs***

# EXHIBIT A

# CLOSED: White Shul Closes Ahead of New Restrictions Effective Friday Morning

By **5TC Team** - October 8, 2020

Hoshana Rabba 5781/Erev Shabbos and Yom Tov, October 8, 2020

Lichvod Dearest White Shul Members, amu"sh:

Shalom U'vrachah, Good Evening, and wishing you all a Gutten Kvittel this Hoshana Rabba.

*We sincerely apologize for the delay in sending this message.*

Times are extremely difficult these days, and the governor's recent severe restrictions are weighing on us quite heavily. Rabbonim have been putting in a great deal of time and energy (and tefillos…) to deal with the many issues at hand. While we are davening fervently that we hear of a favorable ruling tomorrow afternoon (for a temporary restraining order) in response to Agudath Israel of America's request, we must also deal appropriately and responsibly with the present reality on hand.

We at the White Shul- along with other Rabbonim- feel strongly that it is incumbent upon us to adhere to the current guidelines issued by the governor– which sadly mandate that only a single Minyan of just ten people is permitted in our building at any one time. Compounding the difficulty is the governor's current restriction that only one small Minyan is allowed on the entire Shul premises, thereby disallowing use of the outdoor davening areas as well.

To summarize our paramount concerns and the need for full compliance:

1. We must do our part in helping stem the current uptick, flatten the curve, and keep everyone safe and healthy so <u>Yeshivos and Shuls can all fully open soon– and safely remain open.</u>

2. We must do our absolute utmost to <u>prevent any slight Chillul Hashem</u> and also preclude any and all possible *ei'vah*, any animosity, from all those scrutinizing the actions and behavior of Orthodox Jews at this time.

3. We have already been recently visited by officials from the Department of Health (DOH), and have been warned that both the mayor and governor will likely be sending representatives to our neighborhood– with a threat of imposing fines up to $15,000 for any violations of the governor's executive order. In addition to the primary concerns of preventing any Chillul Hashem and not arousing any animosity, we are also חס על ממונן של ישראל.

Even having to pen this e-mail pains us immeasurably. We are hurting beyond words. *Hashem Yerachem Aleinu.* We most certainly must continue to daven as passionately as possible for a *yeshuah gedolah bi'karov* and a quick end to all our *tzaros* and difficulties. But we also must do that which we feel is the right thing to do at this time, and work endlessly to always be מקדש שם שמים תמיד ולעולם.

In light of the above, we sadly must share with you the following:

- **Beginning TOMORROW morning, Hoshana Rabba Shacharis, there will only be a single Minyan of just ten (pre-authorized) people taking place on our Shul's premises.** We are still working on details, but must inform all our dear members and *mispallelim* that our beloved Shul will not be available for any additional Minyanim tomorrow and until further notice. Most unfortunately, there will not be regular Minyanim on the Shul grounds at this time.

- Those individuals who need to retrieve Tallis/Tefillin, Seforim, or any other personal belongings, please feel free to enter the Shul for the <u>sole purpose</u> of retrieving those items, but please ensure there are no more than five people inside the Shul at any time. We remind everyone that masks (covering both mouth and nose) must be worn whenever one enters the Shul building, and we reiterate our previous strong recommendation for all to don a mask anytime you are in any public area.

- We daven and ask for your understanding, patience, and compliance, and implore you to seek other available options for Tefillah B'Tzibbur. One may daven at a safe (mask mandatory) and legal outdoor Minyan (backyard/porch) at this time, and indeed one may daven B'yechidus if Tefillah B'Tzibbur proves too difficult or impractical at this junction.

May HaKB"H answer all of our heartfelt *tefillos* and *bakashos* in the very near future, and may we merit to share only *besuros tovos* in this and all areas henceforth אי"ה.

We will certainly keep you updated and informed of any important details and changes as they arise. Please always feel free and comfortable to contact either one of us for questions or *Chizzuk*— it is our pleasure to assist in any way possible.

With warmest regards and very best wishes for a Gut Kvittel and only Kol Tuv always,

Rabbi Eytan Feiner

Rabbi Motti Neuburger

# EXHIBIT B

# THANKS CUOMO: Hasidic Jews Refused Entry at Newburgh, NY Bowling Alley

October 8, 2020 1:18 am



Special to YWN News:

The repercussions of NY Governor Cuomo's verbal assault Wednesday on the Hasidic and other Orthodox Jewish communities are already beginning to appear.

A Newburg based bowling alley refused service to a number of Orthodox Jewish families on Wednesday afternoon. This was less than 24 hours after the governor's controversial speech and draconian measures limiting synagogue services to ten people per synagogue in what he termed "red zones."

Approximately twenty un-related and un-connected families tried to go bowling when rain forced them to change their Chol HaMoed plans. Slightly after 2:15PM near Newburgh, NY, it began to rain.

One family related their version of what had transpired:

"We had planned a hike for today, when we got to the jump off point of the hike it started to raining," the father in one group reported.

They called a nearby bowling alley called Pat Tarsio Lanes at about 2:30 PM and were told that there were plenty of lanes open and that they should come down. They arrived between 3:00 and 3:15.

The bowling alley is located at 173 South Plank Road (Rt. 52) in Newburgh.

According to the family, when they arrived and staff members saw that they were orthodox Jews, they were refused lanes.

"There must have been twenty families. Every single person was wearing a mask, and we were socially distancing," the father said.

Upon their arrival at Pat Tarsio Lanes, the family met some Hasidic families who warned them what would happen.

"They will tell you that lanes are not available because they have leagues at 5:00 PM. We also called beforehand, and were told to come down and that there were plenty of lanes.

"If the facts of what is alleged are true, it would be very troubling if this bowling alley was discriminating against Orthodox Jews who merely wished to bowl. This calls for an explanation by the owners as to why they were initially given permission to come and refused later on," remarked Charles Miller, a New York City-based attorney.

Pat Tarsio Lanes has been open for over sixty years. Their website states: Originally constructed in 1959 by Pat Tarsio Sr., and Lou "Wrongfoot Louie" Campi, Campi-Tarsio Lanes quickly became a household name. Soon thereafter, Pat took sole ownership of the lanes, which was then re-named "Pat Tarsio Lanes." Located on route 52 in Newburgh, NY, this local spot developed into a neighborhood favorite for serious bowlers and amateurs alike.

And now, over 50 years later, his sons Tony and Pat continue to operate Tarsio lanes, preserving the same core values it was built on and valuing their customers as friends."

A phone call made to Pat Tarsio Lanes went unanswered.

**JOIN THE TENS OF THOUSANDS WHO ALREADY ARE ALERTED OF BREAKING NEWS LIKE THIS IN LIVE TIME:**

**YWN WHATSAPP STATUS UPDATES: CLICK HERE to join the YWN WhatsApp Status.**

**YWN WHATSAPP GROUPS: CLICK HERE to be dded to an official YWN WhatsApp Group.**

(*YWN World Headquarters – NYC*)