STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

NOVEMBER 3, 2020

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

<u>Via ECF</u>
The Honorable Judge Kiyo A. Matsumoto
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: <u>Agudath Israel of America, et al. v. Cuomo, No. 20-cv-04834 (E.D.N.Y.)(KAM)(RML)</u>

Dear Judge Matsumoto:

      This Office represents Defendant Andrew M. Cuomo in his official capacity as the Governor of the State of New York ("Governor Cuomo") in the above-referenced action. I write pursuant to Your Honor's Individual Rule III(B)(1) to outline the arguments that Governor Cuomo intends to raise in his motion to dismiss Plaintiffs' Complaint (ECF No. 1, "Compl.") and to request a discovery stay pending a decision on his motion. We further request that the Court hold a pre-motion conference and set a briefing schedule after the Second Circuit decides Plaintiffs' motion for an injunction pending their appeal from this Court's denial of their motion for a preliminary injunction. The Second Circuit heard Plaintiffs' motion today, November 3, 2020.[1]

<u>Factual Background and Allegations</u>

      This case arises in the context of COVID-19, a "very lethal pandemic" that may result in "death or permanent injuries." Transcript of Preliminary Injunction Hearing, October 9, 2020 ("Tr.") at 65-66 (attached hereto as Ex. A). As of November 2, 2020, over 25,800 New Yorkers have died from this novel coronavirus, with over 16,000 fatalities in New York City alone.[2]

      To counter the initial flood of COVID-19 cases in New York during March and April of this year, Governor Cuomo took swift, drastic action, including the issuance of Executive Orders ("EOs") cancelling non-essential gatherings and temporarily closing non-essential businesses. *E.g.*, EO 202.8, 202.10. These orders were critical measures that have saved untold thousands of lives. *See Geller v. De Blasio*, 2020 WL 2520711, at *4 (S.D.N.Y. May 18, 2020) ("preventing in-person gatherings is crucial to any strategy of containment."). As New York successfully flattened the curve during the late spring and summer, the rate that COVID-19 tests showed positive results decreased significantly from a peak of around 48% in early April to a low of 0.7% in mid-August.[3]

      But in early autumn the virus surged again, and though the positivity rate remained low at 1.2% statewide, the Governor announced that the rate in five New York "hotspots" had spiked to

---

[1] *See* ECF No. 17. The Second Circuit is hearing the motion on the same schedule as a similar motion in the appeal from the denial of a preliminary injunction against Executive Order 202.68 in *Roman Catholic Diocese of Brooklyn, New York v. Cuomo*, 20-cv-4844 (E.D.N.Y.) ("*Diocese*"). Therein, Judge Garaufis will hold a pre-motion conference on the Governor's dismissal motion after the Second Circuit rules on the motion before it for an injunction pending appeal. *Diocese*, 20-cv-4844, Minute Entry, October 30, 2020.
[2] *See* Fatalities, N.Y. State Dep't of Health, available at https://on.ny.gov/2MxLRsJ.
[3] https://forward.ny.gov/percentage-positive-results-region-dashboard.

5.5%. ECF No. 2-9, Decl. of Pls. Counsel, Avi Schick, Ex. F at 9. To prevent further spread, the Governor issued EO 202.68 ("Order") creating containment zones around the hotspots. The Order establishes central "red zones," where non-essential gatherings are cancelled and schools and non-essential businesses may not operate in-person. EO 202.68. However, the Order permits red zone houses of worship to remain open with a capacity of 25% maximum occupancy or 10 people, whichever is fewer. Similarly, in orange zones, non-essential gatherings, schools, and certain non-essential businesses are subject to more severe restrictions than houses of worship. Precautionary "yellow zones" are subject to lesser restrictions than red and orange zones. The Order is temporary and the zones are re-evaluated based on changes in the underlying data. *Id.*; Schick Decl. Ex. F at 6.

Plaintiffs are an Orthodox Jewish group and three synagogues in Brooklyn and Queens and their leaders. When the Complaint was filed, two synagogues were located in red zones and one was in an orange zone. Compl. ¶¶ 13-15; Schick Decl. Ex. J at 10-12. (Recently, the Queens zones were downgraded to yellow. *See infra*). Plaintiffs claim that the Order violates the Free Exercise Clause of the United States Constitution and seek a declaratory judgment preventing its enforcement.

On October 9, 2020, this Court denied Plaintiffs' preliminary injunction motion, holding that the Order was neutral, generally applicable, and did not burden Plaintiffs' free exercise rights. Tr. at 57. The Complaint should be dismissed for the same reason, and because it is moot.

The Complaint Is Moot

"[T]he mootness doctrine ensures that the litigant's interest in the outcome continues throughout the life of the lawsuit." *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993). "In order to satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999).

The Order allegedly prevents Plaintiffs from worshipping "on Jewish holidays observed on October 9, 10, and 11, 2020." Compl. ¶ 97; *id.* ¶¶ 1, 10, 105. Plaintiffs do not base their claim on any other holiday. Because those holidays have passed, enjoining the Order cannot redress Plaintiffs' injuries. Nor does the Complaint implicate the exception to mootness for cases that are "capable of repetition, yet evading review." *Cook*, 992 F.2d at 19. There is no "reasonable expectation" that Plaintiffs will be subject to the same restrictions again, *id.*, because the Order is temporary and under constant reevaluation. Indeed, recent reductions in positivity rates led the Governor to downgrade the red and orange zones in Queens to yellow zones, thereby lifting the challenged restrictions on two of three synagogues that filed this action.[4]

The Complaint Fails to State a Free Exercise Claim

Plaintiffs fail to state a claim under the deferential standard of *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905). *See* Tr. at 47-48 (finding *Jacobson* applies). There, the Supreme Court held that "a community has the right to protect itself against an epidemic of disease," and in such

---

[4] *See* Governor's Press Release (https://www.governor.ny.gov/news/video-audio-photos-rush-transcript-governor-cuomo-details-covid-19-micro-cluster-metrics) wherein the Governor announced on October 22, 2020 a "micro-cluster" initiative even more narrowly focused than the initiative originally set forth in the Order. The data underlying the micro-cluster initiative showed marked improvement in the positivity rates in certain of the red, orange, and yellow zones.

times judicial scrutiny is reserved for a measure that "has no real or substantial relation to" the object of protecting the public health or is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." 197 U.S. at 27, 31. Applying *Jacobson*, Chief Justice Roberts recently found that when, during a pandemic, state officials "act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring) (upholding California order limiting occupancy at houses of worship).

      Here, Plaintiffs fail to plausibly allege that the Order has no real or substantial relation to protecting the public health. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("reviewing court [must] draw on its judicial experience and common sense" to determine plausibility). This Court and others have endorsed the logical proposition that worship services risk spreading COVID-19 by placing many people close together indoors where invisible virus droplets linger in the air. Tr. at 63-64 (quoting *Elim Romanian Pentecostal Church v. Pritzer*, 962 F.3d 341, 346 (7th Cir. 2020)). Indeed, Plaintiffs admit that their sanctuaries hold up to <u>400 people</u>, that group prayer is required, and that each congregant reads aloud. Compl. ¶¶ 57, 64-67. The Order plainly safeguards public health by reducing the risk of viral spread at Plaintiffs' synagogues.

      Moreover, Plaintiffs cannot establish a palpable invasion of rights secured by fundamental law because the Order does not target religion. A law that is neutral and generally applicable survives free exercise review if it is rationally related to a legitimate state interest. *Employment Div., Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872, 881 (1990); Tr. at 50-57. Since the *S. Bay* decision, nearly every court that considered "free exercise challenges to COVID-related restrictions on religious gatherings" has applied a "rational basis analysis." *Diocese*, 20-cv-4844 (E.D.N.Y.), ECF No. 32 ("*Diocese Op.*") at 14-16 (collecting cases) (denying free exercise challenge to EO 202.68). This Court did so as well because "[t]here's nothing on the face of the order's text that singles out religious rituals per se, or even religion." Indeed, it "accord[s] more lenient restrictions" to houses of worship "than other venues." Tr. at 59-60; *see also Diocese Op.* at 19 (applying rational basis scrutiny to limitations on worship services "because they are gatherings, not because they are religious"). And this Court and Judge Garaufis rightly held that the Order survived rational basis review because it is related to the State's legitimate interest in protecting the public from a deadly and highly-contagious virus. Tr. at 50, 65-66; *Diocese Op.* at 23. Because the Order rationally mitigates the ongoing crisis, Plaintiffs' challenge fails.

<u>The Court Should Stay Discovery</u>

      Discovery should be stayed pending resolution of the Governor's motion because he has "made a strong showing that [Plaintiffs'] claim is unmeritorious," and Plaintiffs will not be prejudiced by a relatively short stay pending a potentially dispositive decision. *See Int'l Bhd. of Teamsters Local 456 v. Quest Diagnostics Inc.*, 2011 WL 13377389, at *3 (E.D.N.Y. Oct. 4, 2011) (citing *Transunion Corp. v. PepsiCo*, 811 F.2d 127, 130 (2d Cir. 1987)) (setting forth "good cause" standard for discovery stays). Plaintiffs have no basis to burden the State with discovery in this moot case.

      We thank the Court for its time and consideration.

                                                                     Respectfully submitted,
                                                                       _____/S/_____
cc:      All counsel of record (via ECF)         Todd A. Spiegelman