Troutman Pepper Hamilton Sanders LLP
875 Third Avenue
New York, New York 10022

troutman.com



**Avi Schick**
avi.schick@troutman.com

February 7, 2021

**VIA ECF**

The Honorable Kiyo A. Matsumoto
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     *Agudath Israel of America, et al. v. Andrew M. Cuomo*, No. 1:20-cv-4834 (E.D.N.Y.)

Dear Judge Matsumoto:

    Plaintiffs respectfully submit this letter in advance of tomorrow's status conference in an effort to help focus on the few areas of disagreement regarding the preliminary injunction order.

1.  Defendant's February 5 letter requests that the Court delete the sentence that Defendant does not contend that the 25% and 33% capacity limits on houses of worship in Executive Order 202.68 are narrowly tailored, and cannot satisfy strict scrutiny. Yet in three separate letters o this Court last week, Defendant wrote to make that very point:

•  On February 2, Defendant wrote that "<u>In light of the decisions made in this case by this Court and the appellate courts that have considered it</u>, Defendant Cuomo does not oppose the entry of a preliminary injunction . . . .  Defendant believes that his stated position herein obviates the need for the February 8, 2021 hearing." Dkt. 31 at 1.  The purpose of the February 8 preliminary injunction hearing was, as the Second Circuit directed, to determine "whether the 25% and 33% capacity limits can satisfy strict scrutiny."  Dkt. 26 at 4.

•  On February 4, 2021, Defendant wrote that "In light of the rulings in this case by the U.S. Supreme Court and the Second Circuit, specifically, the finding that 'both the fixed capacity and the percentage capacity limits on houses of worship' in the red and orange zones 'are subject to strict scrutiny,' Defendant consents to the issuance of a preliminary injunction."  Dkt. 34 at 1 (quoting *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 632 (2d Cir. 2020)).  "Defendant respectfully submits that an evidentiary is unnecessary." Of course, the hearing was to determine "whether the 25% and 33% capacity limits can satisfy strict scrutiny." Dkt. 26 at 4



---

- On February 5, Defendant wrote to advise the Court that he "has made clear that he does not dispute the issue of whether the 25% and 33% capacity limits as developed for EO 202.68 are narrowly tailored." Dkt. 38 at 1.

Defendant also failed to submit the required pre-hearing memorandum setting forth its position regarding the issues to be decided at the February 8 hearing. In sum, it is entirely accurate that Defendant has never contended that the 25% and 33% capacity limits imposed on houses of worship by Executive Order 202.68 are narrowly tailored and satisfy strict scrutiny.

In its February 2 minute order denying Defendant's motion to cancel the preliminary injunction hearing, the Court requested that the parties provide "the specific reasons and findings justifying the injunction." The reason this Court should enjoin enforcement of the Order's 25% and 33% capacity limits is because Defendant does not contend that these limits are narrowly tailored—the very issue remanded by the Second Circuit for decision.

2. If Defendant's concessions were not clear enough, this Court can also issue the preliminary injunction based on the uncontested evidence submitted by Plaintiffs, including the Declaration of Dr. Timothy P. Flanigan, M.D., a leading COVID-19 research and treatment expert. Dr. Flanigan analyzed the Centers for Disease Control and Prevention COVID-19 guidance for houses of worship and concluded:

- "There is no public health rationale for treating houses of worship differently from these favored secular activities [under the Order], many of which involve gatherings of individuals in enclosed spaces, often for significant periods of time." (¶ 51) That is because "a virus does not behave differently simply because individuals are in a room for religious worship rather than to conduct business or to shop. (¶ 4) "The safety measures the State imposes and deems sufficient for these settings, such as social distancing, face coverings, and hand hygiene, can and should be applied to houses of worship as the least restrictive means to preventing COVID-19 transmission." (¶ 4)

3. Defendant's February 5 letter also requests the addition of language to the proposed Order. Plaintiffs oppose those additions, which were not present in the Court's January 19, 2021 Order granting a preliminary injunction against Executive Order 202.68's 10 and 25 person limits. In particular, Defendant seeks the ability to unilaterally and at will terminate this Court's preliminary injunction, regardless of any other restriction that he might simultaneously impose. That is contrary to the purpose of a preliminary injunction, which protects Plaintiffs' rights to be free of unconstitutional restrictions pending final judgment, and flies in the face of the Supreme Court's admonition in this very case that "there is no reason why [Plaintiffs] should bear the risk of suffering further irreparable harm in the event of another reclassification." *The Roman Catholic Diocese of Brooklyn, N.Y. v. Cuomo*, 141 S. Ct. 63, 68–69 (2020) (per curiam).



If Defendant issues a revised executive order, he can argue to this Court at that time that the preliminary injunction is no longer necessary. But until final judgment or Defendant makes that showing, the preliminary injunction should remain in place.

Plaintiffs look forward to the Court's resolution of these few issues at tomorrow morning's status conference so that the preliminary injunction can be entered.

Respectfully,

Avi Schick

Cc: Counsel for Defendant (via ECF)