UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------- x
AGUDATH ISRAEL OF AMERICA, AGUDATH :
ISRAEL OF KEW GARDEN HILLS,        :
AGUDATH ISRAEL OF MADISON, AGUDATH :
ISRAEL OF BAYSWATER, RABBI YISROEL :
REISMAN, RABBI MENACHEM FEIFER,    :  **MEMORANDUM AND ORDER**
STEVEN SAPHIRSTEIN,                :
                                   :  No. 20-cv-04834 (KAM)(RML)
                Plaintiffs,        :
                                   :
     -against-                     :
                                   :
KATHY HOCHUL, Governor of the      :
State of New York in her official  :
capacity,                          x
                                   
                Defendant.
--------------------------------- 
**MATSUMOTO, United States District Judge:**

Plaintiffs Agudath Israel of America, Agudath Israel of Kew Garden Hills, Agudath Israel of Madison, Agudath Israel of Bayswater, Rabbi Yisroel Reisman, Rabbi Menachem Feifer, and Steven Saphirstein (together, "Plaintiffs") move, pursuant to 42 U.S.C. § 1988, to recover attorneys' fees in the amount of $921,862.50 and costs in the amount of $13,420.70 to compensate their attorneys for the efforts and costs expended from the inception of this litigation on October 6, 2020 through July 16, 2021, the date on which Plaintiffs' application for fees was fully-briefed. For the reasons set below, the Court grants in part and denies in part Plaintiffs' application, awarding fees in the amount of $368,839.44 for Troutman Pepper Hamilton Sanders LLP and $77,682.50 for the Becket Fund for Religious Liberty. The Court

1

denies the costs claimed by Plaintiffs without prejudice for lack of documentation.

## BACKGROUND

### I.   Procedural History

On October 8, 2020, Plaintiffs commenced this § 1983 action challenging Defendant's Executive Order No. 202.68 ("EO 202.68" or the "Order"), issued on October 6, 2020, that placed certain fixed and percentage capacity restrictions on houses of worship in the areas of the State that were deemed "red" and "yellow" zones based on the severity of COVID-19 cluster outbreaks in Kings, Queens, Broome, Orange, and Rockland Counties.[1]  (ECF No. 1, Complaint.)  That same day, Plaintiffs also moved for a temporary restraining order and a preliminary injunction against the enforcement of the Order, noting the commencement of a Jewish holiday at sundown the following day.  (ECF No. 2, Emergency Motion for Order to Show Cause for Temporary Restraining Order and Preliminary Injunction.)  The Court ordered Defendant respond by 11:00 A.M. on October 9, and Plaintiffs to file any reply two hours thereafter.  (ECF No. 6, Order to Show Cause.)  On the afternoon of October 9, 2020, the Court held a hearing during which it denied the motion for injunctive relief based on, *inter alia*, Plaintiffs'

---

[1] In red zones, gatherings in houses of worship were limited to 10 people or 25% of maximum capacity, whichever was lower.  (ECF No. 56, Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs ("Def. Opp."), at 4.)  In orange zones, gatherings in houses of worship were limited to 25 people or 33% of maximum capacity, whichever was lower.  *Id.*

failure to show a likelihood of success on their claim.  (Minute Order entered October 9, 2020.)

On October 19, 2020, Plaintiffs appealed the denial of their motion for a preliminary injunction to the Second Circuit and moved, two days later, for an emergency injunction pending appeal and to expedite the appeal.  (ECF No. 16, Notice of Appeal; ECF No. 52, Plaintiffs' Memorandum of Law in Support of Motion for Attorneys' Fees ("Pls. Br."), at 5.)  On November 9, the Second Circuit granted the motion to expedite but denied the motion for an emergency injunction because Plaintiffs had not first sought that relief from this Court.  *Agudath Israel of Am. v. Cuomo*, 979 F.3d 177 (2d Cir. 2020).

On November 16, 2020, Plaintiffs filed an emergency application for writ of injunction with Justice Breyer of the United States Supreme Court, pursuant to 28 U.S.C. § 1651(a), to enjoin Defendant from enforcing EO 202.68's capacity restrictions on houses of worship pending the disposition of the appeal in the Second Circuit.  (Pls. Br. at 5.)

On November 25, 2020, the Supreme Court addressed Plaintiffs' application in tandem with *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), another § 1983 action filed in this District challenging only the fixed capacity restrictions of EO 202.68, noting that the two cases "present[ed] the same issue."  *Id.* at 65.  The Supreme Court enjoined the

3

enforcement of the fixed capacity limits pending the Second Circuit appeals, having found that "[t]he applicants have clearly established their entitlement to relief" by showing that "their First Amendment claims are likely to prevail," "denying them relief would lead to irreparable injury," and "granting relief would not harm the public interest." *Id.* at 66.

In discussing the merits of the First Amendment claims in the two cases, the Supreme Court held that the fixed occupancy restrictions must satisfy strict scrutiny, as they "single out houses of worship for especially harsh treatment" and therefore are not regulations of general applicability. *Id.* The Supreme Court found that "[s]temming the spread of COVID-19 is unquestionably a compelling interest," but the restrictions were not narrowly tailored, as there had been no evidence that the plaintiffs in *Agudath* and *Diocese* contributed to the spread of COVID-19 and "there are many other less restrictive rules that could [have been] adopted to minimize the risk to those attending religious services." *Id.* at 67.

On December 28, 2020, the Second Circuit issued a joint decision in *Agudath* and *Diocese*, reversing in part and vacating in part the respective district court decisions that denied plaintiffs' motions for a preliminary injunction. *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620 (2d Cir. 2020). As to the fixed capacity limitations, the Second Circuit reversed and remanded

4

both cases to the district courts "with directions to grant a preliminary injunction against enforcement of those limits." *Id.* at 637. As to the percentage capacity limitations, which were challenged only by the *Agudath* plaintiffs in this action, the Circuit Court vacated "to the extent that [the Court's decision] denied a preliminary injunction against [their] enforcement . . . on houses of worship" and remanded, directing the Court to apply strict scrutiny in the analysis of likelihood of success on the merits. *Id.*

On remand, this Court entered a preliminary injunction against the fixed capacity limits. (Order entered January 19, 2021.) On January 26, 2021, the Court scheduled an evidentiary hearing for February 8 on Plaintiffs' motion to enjoin the percentage capacity limits and directed the parties to submit witness lists, exhibit lists, and pre-hearing memoranda by February 4. (Minute Order entered January 26, 2021.)

On February 2, 2021, Defendant filed a letter motion requesting that the Court cancel the February 8 hearing because Defendant did not oppose the entry of a preliminary injunction against the enforcement of EO 202.68's percentage capacity limits in red and orange zones which "obviates the need for the . . . hearing." (ECF No. 31, Defendant's Motion to Cancel Preliminary Injunction Hearing and Related Briefing.) That same day, the Court denied Defendant's motion to cancel the February 8 hearing on the

ground that the terms of Defendant's consented injunction were ambiguous. (Order entered February 2, 2021.) In that same Order, the Court directed the parties to file a joint proposed order granting a preliminary or permanent injunction. *Id.*

On February 4, 2021, Plaintiffs filed their witness list, exhibit list, and pre-hearing memorandum, as ordered by the Court during the January 26, 2021 status conference. (ECF No. 35, Plaintiffs' Pre-Hearing Memorandum of Law; ECF No. 36, Plaintiffs' Witness List; ECF No. 37, Plaintiffs' Exhibit List.) Defendant did not file any of the ordered documents. Instead, Defendant filed a letter motion for reconsideration of the Court's denial of his request to cancel the hearing and laid out the terms of his proposed preliminary injunction in the letter motion. (ECF No. 34, Defendant's Motion for Reconsideration of Motion to Cancel Preliminary Injunction Hearing and Related Briefing.) The Court held a status conference on February 5, 2021 to discuss Defendant's proposed injunction, during which it notified the parties that the February 8 evidentiary hearing was adjourned and that instead a further status conference would be held to discuss the parties' proposed injunction. (Minute Order entered February 5, 2021.) The parties were directed to submit a joint proposed order granting an injunction later that day. *Id.*

Between the February 5 and February 8 status conferences, there were several letter motions filed by the parties

6

related to their disagreement over the terms of a joint proposed order. (ECF Nos. 39, 41, and 43, Letters; ECF No. 39-1 Proposed Order.)  During the February 8, 2021 status conference, the Court sought the parties' views regarding a permanent injunction enjoining Defendant from enforcing EO 202.68's fixed and percentage capacity limits on houses of worship. Pls. Br. at 9. Plaintiffs favored a permanent injunction, but Defendant did not. *Id.*

On February 9, the Court entered a permanent injunction enjoining Defendant from enforcing the Order's fixed and percentage capacity restrictions on houses of worship in red and orange zones in New York State and ordered that the injunction "shall apply to Defendant and all officers, agents, or employees responsible for enforcing Executive Order 202.68." (Minute Order entered February 9, 2021.)  After the Court entered the permanent injunction, the parties engaged in negotiations over Plaintiffs' fees and costs, but despite several months of negotiations, the parties were not able to reach an agreement. (Def. Opp. at 7.)

## II.  Amounts Sought

On June 25, 2021, Plaintiffs' attorneys filed the instant motion for attorneys' fees. (ECF No. 51, Plaintiffs' Motion for Attorneys' Fees.)  Plaintiffs seek a fee award of $921,862.50, of which $748,732.50 relates to work performed by Troutman Pepper Hamilton Sanders LLP ("Troutman"), and $173,130.00

relates to work performed by the Becket Fund for Religious Liberty ("Becket"). (ECF No. 58, Supplemental Declaration of Avi Schick ("Schick Supp. Decl.") ¶ 4.) Troutman's $748,732.50 fee request reflects 1069.4 hours worked on this case, at requested hourly billing rates for partners of $995 and $815, and for associates of between $595 and $460. (Schick Supp. Decl. at 2.) The paralegal who worked on the case seeks $275 per hour. *Id.* The requested rates for Plaintiffs' counsel are reflected in the chart below:

| Attorney | Rate |
|---|---|
| Avi Schick (Partner) | $995 |
| Misha Tseytlin (Partner) | $815 |
| Alex W. Smith (Associate) | $595 |
| Mary Grace W. Metcalfe (Associate) | $595 |
| Sean T. H. Dutton (Associate) | $540 |
| Kevin M. LeRoy (Associate) | $540 |
| Christopher J. Kelleher (Associate) | $460 |
| Sarah Harris-Finkel (Paralegal) | $275 |

*Id.*

Becket's $173,130.00 fee request reflects 152.2 hours worked on this case, at requested hourly billing rates for attorneys of between $1200 and $860. (ECF No. 55-1, Exhibit A to Declaration of Mark L. Rienzi ("Rienzi Decl."); ECF No. 55-2, Exhibit B to Rienzi Decl.) Becket's requested rates are reflected in the chart below:

| Attorney | Rate |
|---|---|
| Mark Rienzi (President & CEO) | $1200 |
| Eric Rassbach (VP & Senior Counsel) | $1200 |
| Luke Goodrich (VP & Senior Counsel) | $1000 |
| Lori Windham (Senior Counsel) | $1000 |
| Daniel Blomberg (Senior Counsel) | $860 |

*Id.*

Plaintiffs also seek an award of costs in the amount of $13,420.70, "including expenses relating to court reporters, filings, research, and printing, incurred in connection with this action." (ECF No. 54, Declaration of Avi Schick ("Schick Decl.") ¶ 8.)

## DISCUSSION

### I.  Plaintiffs are Entitled to Attorneys' Fees and Costs

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988,[2] authorized district courts to award reasonable attorneys' fees to prevailing parties in civil rights litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "To qualify as a prevailing party, a plaintiff must obtain at least some relief on the merits of his claim." *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 934 F.3d 238, 243 (2d Cir. 2019) (citing *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)) (internal quotation mark omitted).  There is no dispute that Plaintiffs are prevailing parties within the meaning of Section 1988 and are thus entitled to a reasonable fee award.  Plaintiffs, who were granted the relief sought in its entirety, a permanent injunction against the enforcement of EO 202.68's capacity limits—

---

[2] 42 U.S.C. 1988(b) states, "In any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."

both fixed and percentage—on houses of worship in areas deemed red and orange zones in New York State, are indisputably the prevailing parties, a point not contested by Defendant.  (*See* Def. Opp. at 1 ("Governor Cuomo does not dispute that Plaintiffs are prevailing parties in this case and are therefore entitled to recover a reasonable attorney's fee pursuant to 42 U.S.C. § 1988(b).").)

## II.   Reasonable Attorneys' Fees

Once a district court determines that a party has prevailed, it must determine and calculate a reasonable attorney's fee.  District courts are given "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Barfield v. N.Y.C. Health and Hosp. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008).

District courts in this Circuit use what is commonly referred to as the "lodestar" method to calculate a presumptively reasonable fee, which involves multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008). "[A] district court may, in extraordinary circumstances, adjust the presumptively reasonable fee when it 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Lilly v. City of N.Y.*, 934 F.3d

222, 230 (2d Cir. 2019) (citing *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011)).

## A. Reasonable Hourly Rates

A reasonable hourly rate is "the rate a paying client would be willing to pay," "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. "This rate should be based on rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Lawton v. Success Acad. of Fort Greene*, No. 15-cv-7058(FB), 2021 WL 1394372, at *7 (E.D.N.Y. Jan. 3, 2021), *report and recommendation adopted*, 2021 WL 911981 (E.D.N.Y. Mar. 10, 2021) (citations omitted) (internal quotation marks omitted). "The 'community' is generally considered the district where the district court sits." *Id.* (citations omitted). In addition to the prevailing district rates, the Second Circuit has advised courts to consider the case-specific factors enumerated in *Arbor Hill* and *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92—93 (1989).[3] *HomeAway.com, Inc. v. City of N.Y.*,

---

[3] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the

523 F. Supp. 3d 573, 595 (S.D.N.Y. 2021).  The *Arbor Hill* factors are:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent renumeration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

522 F.3d at 184.

"In recent § 1983 cases, courts in this District have set reasonable hourly rates at approximately $300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-$100 for paralegals," *Anania v. United States*, No. 16-cv-3542(SJF), 2021 WL 76837, at *4 (E.D.N.Y. Jan. 8, 2021), and "fees in complex cases . . . have ranged between $400-$600 per hour for partners, $200-$400 per hour for associates and $75-100 per hour for paralegals." *Lawton*, 2021 WL 1394372, at *8. "The highest rates in this district are reserved for expert trial

---

professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields." *Scharff v. Cnty. of Nassau*, No. 10-cv-4208(DRH), 2016 WL 3166848, at *5 (E.D.N.Y. May 20, 2016) (citation omitted), *report and recommendation adopted*, 2016 WL 3172798 (E.D.N.Y. June 6, 2016). *See, e.g., Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, No. 10-cv-2262(DRH), 2019 WL 2870721, at *10 (E.D.N.Y. June 18, 2019) (awarding $600 hourly rates to two experienced civil rights attorneys with more than fifty years of experience, who had litigated other First Amendment cases and worked as law school professors), *report and recommendation adopted*, 2019 WL 2869150 (E.D.N.Y. July 3, 2019).

The rates that Troutman seeks, $995 and $815 per hour for the partners, $595, $540, and $460 per hour for the associates, and $275 per hour for the paralegal, significantly exceed those usually awarded in this District. Becket's claimed hourly rates for its attorneys, $1200, $1000, and $860, deviate even further from this District's prevailing rates for civil rights actions.[4] Avi Schick, a partner at Troutman, describes his and the rest of

---

[4] In fact, the rates awarded in the recent complex civil rights cases in this District that Plaintiffs cite to as support for higher rates are nowhere near the rates claimed by Plaintiffs' counsel. *See, e.g., Centro*, 2019 WL 2870721, at *10—*11 (awarding $600 and $500 hourly rates); *Lawton*, 2021 WL 1394372, at *8—*10 (awarding hourly rates between $500 to $600 for senior attorneys and between $300 to $350 for mid-level attorneys).

his team's legal experience in a sworn declaration and provides time sheets generally describing the work performed and time expended by Troutman attorneys on this matter.  (Schick Decl. ¶ 13; ECF No. 54-1, Exhibit A to Schick Decl.; ECF No. 58-1, Exhibit A to Schick Supp. Decl.)  Likewise, Becket's President and Chief Executive Officer, Mark Rienzi, submitted a sworn declaration describing his and the other Becket attorneys' qualifications and expertise. (Rienzi Decl. ¶¶ 11—19).  He also submitted the resumes of the Becket attorneys as exhibits to his declaration.  (ECF Nos. 55-4—55-14, Exhibits D—N to Rienzi Decl.)  Mr. Rienzi, like Mr. Schick, submitted time sheets describing the work performed and time spent by the Becket attorneys on this matter.  (ECF Nos. 55-1—55-3, Exhibits A—C to Rienzi Decl.)

Defendant contends that these hourly rates are not reasonable and argues that the Court should award rates no greater than $450 for Troutman partners Schick and Tseytlin, and Becket attorneys Rienzi and Rassbach; $325 for Troutman senior associates Smith, Dutton, Metcalfe, and LeRoy, and Becket attorneys Goodrich, Windham, and Blomberg; $200 for Troutman junior associate Kelleher; and $100 for Troutman paralegal, Harris Finkel.  (Def. Opp. at 10.)

Although Plaintiffs' counsel fail to provide the fee agreement with their clients, Troutman counsel assert that their requested hourly rates are their "customary hourly rates for

14

complex work." (Pls. Br. at 21.) (*See also* Schick Decl. ¶ 5 ("The fees requested in this motion are based on Troutman Pepper's rates charged to Plaintiffs in this matter, which are materially identical to the rates Troutman Pepper customarily charges its clients in relation to substantially similar matters in terms of novelty and complexity.").) Becket counsel similarly fail to provide a fee agreement, however, Mr. Rienzi states in his declaration that the hourly rates claimed by Becket are less than the typical rates of experienced Supreme Court practitioners but above the rates that are set forth in the "LSI Laffey Matrix." (Rienzi Decl. ¶ 44.) According to Mr. Rienzi, "Becket proposes rates that are approximately 20% lower than what would be reasonabl[e] for Supreme Court experts." (Rienzi Decl. ¶ 46.)

Plaintiffs argue that counsel's rates are reasonable, "[c]onsidering the complete victory in this watershed case for religious freedom that counsel delivered while operating under immense time pressure and addressing complex, novel questions of constitutional law during a national emergency." (Pls. Br. at 21.) Plaintiffs correctly note that the case was "of national importance," entailed "emergency briefing and argument schedules," precluded some of its attorneys from working on other billable matters, and was litigated against "vigorous opposition of Defendant." (Pls. Br. at 16, 18.) Additionally, Plaintiffs assert that the novelty and complexity of the issues demanded counsel

highly experienced both in complex litigation and in "Free Exercise and COVID-19 related challenges" and that Plaintiffs' counsel overcame "unfavorable case law" and pursued "what many considered to be an 'undesirab[le]' position at the time." *Id.* at 11, 18—19 (citation omitted).

Here, the *Johnson* and *Arbor* factors cut both favorably for and against Plaintiffs' counsel. The Court agrees with Plaintiffs that this was not a "garden variety" civil rights case and, therefore, a relatively higher fee award is arguably warranted. *See Centro*, 2019 WL 2870721, *6 ("[T]he complexity of a matter will support an award at the high end of the district spectrum"). *Cf. Walker v. City of N.Y.*, No. 11-cv-314(CBA), 2015 WL 4568305, at *4 (E.D.N.Y. July 28, 2015) ("The straightforward legal nature of the claims asserted here weighs in favor of an award on the lowerend of the range."). Other factors such as the results obtained and their national impact, the demands of the case, both in terms of time and resources, and the experience, reputation, and ability of the attorneys, also weigh in Plaintiffs' favor. *See Barfield*, 537 F.3d at 152 ("'[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff.") (citing *Farrar*, 506 U.S. at 114); *Heng Chan v. Sung Yue Tung Corp.*, No. 03-cv-6048(GEL), 2007 WL 1373118, at *3 (S.D.N.Y. May 8, 2007) ("it is appropriate to

award a relatively high hourly rate that reflects the institutional resources that made it possible for these attorneys to take on the case").

Simultaneously, however, some factors militate against fee rates greater than those typically awarded to civil rights attorneys in this District of comparable experience and reputation. First, some courts have observed that "a discount in fees is appropriate insofar as the market rate for civil rights litigation services is lower than the market rate for services provided to high-profile corporate clients." *Heng Chan*, 2007 WL 1373118, at *3. *See also Pastre v. Weber*, 800 F. Supp. 1120, 1125 (S.D.N.Y. 1991) ("we think there is force in defendant's argument that he should not be required to pay for legal services at the rate Hughes Hubbard would charge to, say, General Motors or IBM (should they be among its clients), but should be required to compensate plaintiff only for what would have been charged by a competent attorney specializing in civil rights litigation.").

Additionally, it would be remiss of the Court to ignore the non-monetary benefits, such as reputational enhancement, that counsel may derive from its representation in this action. *See HomeAway.com, Inc.*, 523 F. Supp. 3d at 597 ("in a high-profile case in which a firm's victory may easily and profitably be marketed to existing and potential clients, a client 'might be able to negotiate with [its] attorneys, using their desire to

17

obtain the reputational benefits that might accrue from being associated with the case'") (quoting *Arbor Hill*, 522 F.3d at 190); *Schwartz v. United States Drug Enf't Admin.*, No. 13-cv-5004(CBA), 2019 WL 1299192, at *8 (E.D.N.Y. Mar. 1, 2019) (holding that the defendant should not have to pay the rates the firm's corporate clients would pay, in part, because the case gave its young associates opportunities like "participat[ing] in a Second Circuit oral argument" that would "undoubtedly enable[ ] the firm to attract associates of a caliber that might not otherwise be available to it.'") (citing *Pastre*, 800 F. Supp. at 1125), *report and recommendation adopted*, 2019 WL 1299660 (E.D.N.Y. Mar. 20, 2019). As noted repeatedly throughout Plaintiffs' papers, the plaintiffs in both this and the *Diocese* cases achieved a "watershed victory,"[5] and the exigent nature of the cases allowed counsel to litigate in three different federal courts, including our Nation's highest court, in five months' time. Having these factors in mind, the Court considers the hourly rates of Troutman and Becket in turn.

---

[5] Plaintiffs also assert that the Court should apply "an upward adjustment" to the lodestar amount "because this litigation presents 'extraordinary circumstances' in which the factors underlying the presumptively reasonable fee determination do not adequately account for the success achieved." (Pls. Br. at 27.) "[A]n enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010). In support of their argument that the instant case presented extraordinary circumstances, Plaintiffs cite the results obtained, difficulty of the case, and the undesirability of the case, which are fully reflected in the lodestar calculation and, therefore, cannot be used as grounds for an enhancement.

Finally, counsel in this case, in tandem with plaintiff's counsel in the *Diocese* case, raised similar arguments before the appellate courts. Counsel in *Diocese* accepted fees of $400,000.00 for virtually the same work.

**Troutman's Rates**

Mr. Schick, a 1994 graduate of Columbia Law School, has more than twenty-five years of experience and was a former Deputy Attorney General of the State of New York. (Pls. Br. at 19; Schick Decl. ¶ 13(a).) Although Mr. Schick has extensive complex and appellate litigation experience, including arguing before the Second Circuit, his practice focuses on government enforcement actions and investigations. Additionally, the Court finds it difficult to assess the depth of Mr. Schick's experience litigating Free Exercise cases based on the terse statement in his declaration that "he has devoted a substantial portion of his practice to pursuing Free Exercise claims." (Schick Decl. ¶ 13(a).) Mindful that the highest rates in this District for § 1983 claims are reserved for attorneys "who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields," *Scharff*, 2016 WL 3166848, at *5, the Court finds that $550 is an appropriate hourly rate for Mr. Schick. *See Lawton*, 2021 WL 1394372, at *8–*9 (awarding "a slightly lower rate of $500 per hour," to a senior attorney with "a long and distinguished career as a litigator" because he, *inter alia*, "[did]

19

not seem to have specialized in education and disability to the same extent as" the other senior attorneys who were awarded $600 per hour).

Misha Tseytlin, a partner and head of the Appellate and Supreme Court practice at Troutman, has been practicing for approximately fifteen years. (Schick Decl. ¶ 13(b).) Prior to joining Troutman, Mr. Tseytlin served as the Solicitor General for the State of Wisconsin, as well as the General Counsel and Deputy Solicitor General of the Office of the West Virginia Attorney General. *Id.* He was a law clerk for the Honorable Anthony Kennedy of the United States Supreme Court, the Honorable Janice Rogers Brown of the D.C. Circuit, and the Honorable Alex Kozinski of the Ninth Circuit. *Id.* Although Mr. Tseytlin "has pursued Free Exercise claims in prior cases," he, like Mr. Schick, does not specialize in civil rights litigation. *Id.* Mr. Tseytlin has not practiced as long as Mr. Schick has, but in consideration of his significant appellate litigation experience and qualifications, the Court finds that his reasonable rate is $500 per hour.

The Court finds reasonable a rate of $375 per hour for W. Alex Smith and Mary Grace W. Metcalfe, and $350 per hour for Sean Dutton and Kevin M. LeRoy, which are slightly above the range of presumptively reasonable hourly rates between $200 and $325 for senior associates in this District. These four associates, who have practiced for about six to eight years, are entitled to rates

at the high end of the spectrum for senior associates, in light of the favorable case-specific factors discussed above. (Schick Decl. ¶¶ 13(c)—(f).)

Troutman junior associate Christopher J. Kelleher has practiced for approximately two years and does not have experience litigating Free Exercise claims other than the instant action. (Schick Decl. ¶ 13(g).) The Court finds that $200 per hour, which is the highest presumptively reasonable rate for junior associates in this District, is appropriate. Finally, the "[p]revailing hourly rates for paralegals in this District are typically between $75.00 and $100.00." *Thomas v. City of N.Y.*, No. 14-cv-7513(ENV), 2017 WL 6033532, at *6 (E.D.N.Y. Dec. 1, 2017). The Court finds that Troutman paralegal Sarah Harris-Finkel is entitled to an hourly rate of $100, given that she has over twenty years of experience as a litigation paralegal. (Schick Decl. ¶ 13(h).)

In sum, the Court finds the below hourly billing rates for Troutman attorneys and paralegal reasonable.

| Attorney | Rate |
|---|---|
| Avi Schick (Partner) | $550 |
| Misha Tseytlin (Partner) | $500 |
| Alex W. Smith (Associate) | $375 |
| Mary Grace W. Metcalfe (Associate) | $375 |
| Sean T. H. Dutton (Associate) | $350 |
| Kevin M. LeRoy (Associate) | $350 |
| Christopher J. Kelleher (Associate) | $200 |
| Sarah Harris-Finkel (Paralegal) | $100 |

**Becket's Rates**

As noted above, the hourly rates claimed by Becket diverge even further from the prevailing rates for this District. Mr. Rienzi states in his declaration that Plaintiffs retained Becket to serve "a very particular need"—to provide guidance on their application to the Supreme Court for an All Writs Act injunction.  (Rienzi Decl. ¶¶ 20, 23.)  Mr. Rienzi supports the Becket attorneys' hourly rates by citing to declarations submitted by other Supreme Court practitioners in cases filed and litigated in other federal districts.  (Rienzi Decl. ¶¶ 37–40.)[6]  According to Mr. Rienzi, successful Supreme Court practitioners "earn between $1,000 and $1,800 per hour."  (Rienzi Decl. ¶ 17.)  This Court recognizes Becket's experience in religious liberty law and extensive Supreme Court practice pursuing religious liberty claims, including winning two prior emergency All Writs Act injunctions.  (Rienzi Decl. ¶¶ 4–7.)  Additionally, the Court acknowledges that some clients choose to hire specialized Supreme Court counsel to handle their cases before the Supreme Court.  The Second Circuit has noted, however, that "the touchstone . . . for

---

[6] Mr. Rienzi's declaration informs the Court of various rates that other Supreme Court practitioners *sought* but does not shed light on the fees that they were *awarded*.  (*See, e.g.*, Rienzi ¶ 17 ("For instance, in 2015, Thomas C. Goldstein of Goldstein & Russell, P.C., *sought* fees based on a rate of $1,100 per hour for his work on a Fourth Amendment case before the [Supreme] Court.") (emphasis added).)  In fact, in *Bourke v. Beshear*, No. 13-cv-750(CRS), 2016 WL 164626, *5–*6 (W.D. Ky. Jan. 13, 2016), which Mr. Rienzi cites for the proposition that Supreme Court practitioners "earn between $1,000 and $1,800 per hour," the district court awarded $750, $700, $400, and $425 per hour to the Supreme Court practitioners.

awarding attorneys' fees in civil rights cases is that district courts should award fees *just high enough* to attract competent counsel," *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) (citation omitted) (internal quotation marks omitted), not fees that would allow litigants to hire the purported Rolls-Royce of counsel.[7]  A reasonable hourly rate is "the rate a paying client would be willing to pay," and "a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.  The Court finds that a reasonable upward adjustment, albeit not to the extent sought by Plaintiffs, to the District's presumptively reasonable hourly rates are appropriate to account for the Becket attorneys' notable expertise in religious liberty law and in pursuing All Writs Act injunctions.

---

[7] Plaintiffs' argument that the rates are reasonable because "if Becket were charging its clients, it would be able to charge Supreme Court expert rates" is also not availing.  (Rienzi ¶ 43.)  In a similar vein, David Zwiebel, Executive Vice President of Agudath Israel of America, submitted a sworn declaration, in which he, noting his "familiar[ity] with the ordinary and customary rates charged by first-rate litigators in New York and Washington, D.C.," opines that "the rates sought by Troutman Pepper and the Becket Fund fall comfortably within those rates."  (ECF No. 53, Declaration of David Zwiebel ¶ 14.)  "On a fee-shifting application, however, the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerance for spending."  *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 52 (S.D.N.Y. 2015).  *See also Gurung v. Malhotra*, 851 F. Supp. 2d 583, 596-97 (S.D.N.Y. 2012) ("The issue thus is not what well-heeled clients might be willing to pay, but the 'hourly rate at which a client who wished to pay no more than necessary would be willing to compensate his attorney'") (citing *Arbor Hill*, 522 F.3d at 191).

Mr. Rienzi, the President and Chief Executive Officer of Becket, has been practicing law for about twenty-one years. (Rienzi Decl. ¶ 4; ECF No. 55-4, Exhibit D to Rienzi Decl. ("Becket Exhibit D").)  He joined Becket in 2011 and has been litigating exclusively religious liberty cases since.  (Becket Exhibit D.) Mr. Rienzi is a professor of law at the Catholic University of America, Columbus School of Law, and his academic work focuses on religious liberty and First Amendment issues.  (Rienzi Decl. ¶¶ 10, 12.)  From 2017 to 2019, he also taught religious liberty and supervised a religious liberty externship clinic as a visiting professor at Harvard Law School.  (Rienzi Decl. ¶ 11.)  Weighing the relevant case-specific factors and Mr. Rienzi's knowledge and expertise in Free Exercise litigation and All Writs Act injunction application, the Court finds that Mr. Rienzi is entitled to an hourly rate of $600.

Eric Rassbach is Vice President and Senior Counsel at Becket.  (Rienzi Decl. ¶ 16.)  He has been practicing for approximately twenty-two years and has been litigating exclusively Free Exercise cases at Becket since 2003.  (*Id.*; ECF No. 54-5, Exhibit E to Rienzi Decl. ("Becket Exhibit E").)  Mr. Rassbach has won seven merits cases and two other All Writs Act injunctions at the Supreme Court and argued six telephonic oral argument to the Supreme Court.  (Becket Exhibit E.)  Like Mr. Rienzi, an hourly rate of $600 is appropriate for Mr. Rassbach.

Luke Goodrich, Vice President and Senior Counsel at Becket, has been practicing for approximately seventeen years, litigating exclusively religious liberty cases since 2008. (Rienzi Decl. ¶ 17.)  Mr. Goodrich, like Mr. Rassbach, has won seven cases and two other All Writs Act injunctions at the Supreme Court.  (ECF No. 54-6, Exhibit F to Rienzi Decl. ("Becket Exhibit F").)  From 2013 to 2021, Mr. Goodrich taught courses on law and religion as an adjunct professor of law at the University of Utah, S.J. Quinney College of Law.  (Becket Exhibit F.)  Considering that Mr. Goodrich has not practiced as long as Mr. Rienzi and Mr. Rassbach have, the Court finds $525 per hour is appropriate for Mr. Goodrich.

Lori Windham is Senior Counsel at Becket, where she has litigated religious liberty cases since graduating from law school in 2005. (Rienzi Decl. ¶ 18.)  Ms. Windham testified as an expert on First Amendment and religious freedom law before the U.S. House Judiciary Committee and the U.S. Civil Rights Commission.  (ECF No. 54-7, Exhibit G to Rienzi Decl.)  An hourly rate of $500 is also appropriate for Ms. Windham.

Daniel Blomberg is Senior Counsel at Becket.  (Rienzi Decl. ¶ 19.)  He has been practicing law for about thirteen years and has been litigating exclusively religious liberty disputes at Becket since 2013.  (ECF No. 54-8, Exhibit H to Rienzi Decl.)  The

Court finds that Mr. Blomberg is entitled to an hourly rate of $450.

In sum, the reasonable hourly rates for Becket attorneys are below.

| Attorney | Rate |
|---|---|
| Mark Rienzi (President & CEO) | $600 |
| Eric Rassbach (VP & Senior Counsel) | $600 |
| Luke Goodrich (VP & Senior Counsel) | $525 |
| Lori Windham (Senior Counsel) | $500 |
| Daniel Blomberg (Senior Counsel) | $450 |

**B. Reasonable Number of Hours Expended**

The Court next considers the reasonableness of counsel's claimed number of hours.[8]  The party seeking attorney's fees must submit contemporaneously created time records in support of its fee application, and the trial court has discretion to reduce the claimed hours "where proposed billing schedules are unsupported by evidence or objectively unreasonable." *Martinez v. City of N.Y.*, 330 F.R.D. 60, 71—72 (E.D.N.Y. 2019). *See Schwartz*, 2019 WL 1299192, at *10 ("When reviewing an application for attorneys' fees, the Court should exclude 'excessive, redundant or otherwise unnecessary' hours.") (citing *Hensley*, 461 U.S. at 434).  "Where

---

[8] District courts have the authority to award fees incurred on appeal.  *See Dague v. City of Burlington*, 976 F.2d 801 (2d Cir. 1991) (holding that, "barring unusual circumstances, when questions are presented such as the amount of recovery, the extent to which a plaintiff is a prevailing party, and what if any adjustment is to be given for delay in payment, determination of a reasonable attorney's fee under the fee-shifting statutes should normally be decided by the district court in the first instance.").  This Court, however, in assessing the reasonableness of the hours claimed by Plaintiffs' counsel for appellate proceedings, notes the difficulty in doing so, given the lack of firsthand observation of the services rendered by Plaintiffs' counsel before the Second Circuit and the United States Supreme Court.

entries on a time sheet are vague or duplicative or otherwise insufficient, a court need not itemize individual entries as excessive; rather, it may make an 'across-the-board reduction, or percentage cut, in the amount of hours.'" *Martinez*, 330 F.R.D. at 72 (citation omitted). *See also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.").

Defendant argues that the hours expended by Plaintiffs' counsel are excessive for the following reasons: (1) disproportionate billing by partners or partner-level attorneys with high hourly rates, (2) duplication of work, (3) block billing, (4) billing attorney rates for paralegal tasks such as cite checking, proofreading, and collating fees, (5) inclusion of the hours spent on Plaintiffs' motion for an injunction pending appeal in the Second Circuit, which was denied for procedural reasons, (6) inclusion of the hours spent on tasks that did not lead to any outcome, and (7) excessive and duplicative billing for work related to the fee application.  (Def. Opp. at 16—24.)

**Block Billing**

At the outset, Troutman's fee award should be reduced by 5% to account for block billing.  The time entries submitted by Troutman are fairly specific and note the tasks completed, but the

27

entries fail to delineate the time spent on each discrete task, thus hindering the Court's ability to determine whether the hours are reasonable, particularly where the number of hours blocked together is high and covers time spent on multiple tasks. Although block billing is not an automatic bar to recovery, the block-billed time entries submitted by Troutman are similar to entries found deficient and therefore warranting reductions by courts in this Circuit. *See, e.g.*, *Benihana, Inc. v. Benihana of Tokyo, LLC*, No. 15-cv-7428(PAE), 2017 WL 6551198, at *6 (S.D.N.Y. Dec. 22, 2017) ("For example, [one] entry for January 9, 2017 reports seven hours worked on 'review and revisions of motion for sanctions; editing and organization of exhibits; interoffice conferences, telephone conferences, e-mails regarding status and strategy.'"); *Walpert v. Jaffrey*, No. 13-cv-5006(PGG), 2016 WL 11271873, at *16 (S.D.N.Y. Aug. 17, 2016) ("For example, Pasternak's April 14, 2013 time entry indicates she spent 3.6 hours on four separate tasks, Woldenberg's August 15, 2013 time entry indicates Woldenberg spent 4 hours on three separate tasks, Pasternak's January 13, 2014 time entry indicates she spent 8.3 hours on eight separate tasks and Pasternak's January 14, 2014 time entry indicates she spent 4.1 hours on seven separate tasks"),

*report and recommendation adopted*, 2017 WL 1063461 (S.D.N.Y. Mar. 21, 2017).[9]

As for Becket's time entries, there are some instances of block billing, as Defendant points out, but they are not so deficient to warrant an across-the-board reduction.

**Top-Heavy Staffing and Paralegal Tasks**

Defendant asserts that a 5% reduction should be applied for counsel's top-heavy billing, meaning that partners were utilized to accomplish tasks that could have been adequately completed by an associate. (Def. Opp. at 16—17.) The Court agrees with Plaintiffs that Defendant, other than comparing the hours billed by the four partner-level attorneys to those billed by the rest of their respective teams, does not point to any specific examples showing that partner-level attorneys took on associate-level tasks. (ECF No. 57, Reply Brief in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Pls. Reply"), at 16—17.) Additionally, in asserting that the relative number of hours billed

---

[9] Some of the more egregious examples of block billing and duplication by Troutman are an October 7, 2020 time entry by Mr. Smith for 19.9 hours that states, "Draft memorandum of law in support of motion for temporary restraining order and preliminary injunction, motion, declarations of plaintiffs and other witnesses and attorneys, show cause order and declaration; prepare order to show cause and TRO; research relating to free exercise clause claims; conference with Avi Schick and Misha Tseytlin regarding strategy, and follow up calls and emails," and a November 12, 2020 time entry by Mr. Schick for 7.5 hours that states, "Call with Todd Speigelman; confer with Alex Smith re request for injunction, and review and revise letter re same; call with clients re Supreme Court application; numerous client calls re application for emergency relief from Supreme Court; review and revise draft application; calls and emails with Misha, Alex, Becket and others re same." (Exhibit A to Schick Decl.)

by Mr. Rienzi and Mr. Rassbach is high, Defendant does not account for the forty-five hours billed by Becket's junior attorneys that were voluntarily written off by Becket in an exercise of billing judgment.  Upon review of Troutman's time records, the Court finds that most of the hours billed by Mr. Schick and Mr. Tseytlin were spent strategizing, outlining briefs, reviewing and editing draft filings, preparing for and participating in oral argument, communicating internally or with Becket, clients, or opposing counsel, and conducting settlement negotiations.  (Exhibit A to Schick Decl.)  As for Becket, the Court finds that the three-hour task of finalizing a brief for filing that Mr. Rienzi completed on November 16, 2020 could have been delegated to a more junior attorney, such as Mr. Blomberg.  (Exhibit C to Rienzi Decl.)  The Court therefore reduces the hourly rate for those 3 hours from Mr. Rienzi's rate of $600 to Mr. Blomberg's rate of $450, which results in a deduction of Becket's requested fees by $450.

        The courts in this Circuit are split on whether proofreading, cite checking, and preparing exhibits are reasonable attorney tasks.  *Compare Can. Dry Del. Valley Bottling Co. v. Hornell Brewing Co.*, Inc., No. 11-cv-4308(PGG), 2013 WL 6171660, at *6 (S.D.N.Y. Nov. 25, 2013) ("It is not unreasonable for an attorney filing a motion to be involved in preparing the substance of the motion papers, including supporting declarations and exhibits, and cite-checking the finished brief."), *with Putnam*

*Leasing Co., Inc. v. Fields*, No. 05-cv-141(RJD), 2007 WL 2230160, at *5 ("Paralegal work generally includes preparation of trial exhibits, factual investigation, assistance with depositions, researching and cite checking."). As for the 35.9 hours Troutman spent on proofreading and cite checking, even if they were reasonable attorney tasks, because they generally would be accomplished by a junior-level attorney, the Court applies an hourly rate of $150, the rate between the $100 per hour rate awarded to Ms. Harris-Finkel and the $200 per hour rate awarded to Mr. Kelleher. Therefore, Troutman's fees should be reduced by $6,790.00.[10]

The hours counsel billed for compiling appendices[11] and "collating fees," on the other hand, should be billed at the

---

[10] This includes: 2.15 hours, or one-quarter of the 8.6 hours Mr. Dutton spent on October 8, 2020 completing four tasks, including proofreading documents for filing (a $430 reduction); 0.7 hours Mr. LeRoy spent proofreading filings on October 8, 2020 (a $140 reduction); 3.45 hours, or one-half of the 6.9 hours Mr. Dutton spent on October 9, 2020 competing two tasks, including proofreading and finalizing documents for filing (a $690 reduction); 0.8 hours Mr. Kelleher spent cite checking on November 5, 2020 (an $40 reduction); 2.3 hours Ms. Metcalfe spent cite checking on November 15, 2020 (a $517.50 reduction); 4.5 hours Mr. Dutton spent proofreading and finalizing papers for filing on November 16, 2020 (a $900 reduction); 10.5 hours Mr. Dutton spent cite checking, proofreading, and finalizing filings on November 17, 2020 (a $2100 reduction); 1.7 hours Mr. LeRoy spent cite checking on November 21, 2020 (a $340 reduction); 2.3 hours Ms. Metcalfe spent cite checking on November 21, 2020 (a $517.50 reduction); 1.4 hours Ms. Metcalfe spent proofreading on November 22, 2020 (a $315 reduction); 3.3 hours Mr. Dutton spent proofreading and cite checking on December 14, 2020 (a $660 reduction); 2.8 hours Mr. Kelleher spent cite checking on June 25, 2021 (a $140 reduction). (Exhibit A to Schick Decl.; Exhibit A to Schick Supp. Decl.)

[11] That compiling appendices for filing is a task that can be adequately completed by a paralegal is demonstrated by Ms. Harris-Finkel's November 17, 2020 time entry, which includes "[c]ompil[ing] and organiz[ing] documents in

paralegal rate of $100 per hour.   (Exhibit A to Schick Decl.;
Exhibit C to Rienzi Decl.)   Therefore, Troutman's fees should be
reduced by $750.00.[12]   As for Becket, the 4.5 hours Mr. Rassbach
spent on "collating fees" should billed at $100 per hour, resulting
in a reduction of its fees by $2,250.

### Duplication of Work

Additionally, Defendant requests that the Court deduct
the "time incurred by Becket to prepare Troutman's attorneys for
proceedings in the Second Circuit and in this Court, in which
Becket's attorneys did not appear as counsel" and "time incurred
by Becket in preparing the motion for fees" as duplicative.  (Def.
Opp. at 17 n.9.)

First, though Becket counsel should have noted their
appearance on this Court's docket, the Court finds that, given
Becket's expertise pursuing religious liberty claims in federal
court, including at the district and appellate levels, it was
reasonable for Becket to remain involved in the remanded
proceedings that followed the Supreme Court's issuance of an All
Writs Act injunction.

For the hours billed by Becket for its work on the fee
application, the Court acknowledges Becket's need to prepare and

---

connection with finalizing brief and appendix in the Second Circuit." (Exhibit
A to Schick Decl.)
[12] This includes 3.0 hours, or one-quarter of the 12.1 hours Mr. Dutton spent
on November 15, 2020 completing four tasks, including compiling an appendix for
a filing (a $750 reduction).

submit a separate contemporaneously created time record, declarations describing the circumstances of its engagement and supporting the reasonableness of the fees claimed, and the resumes of the attorneys who worked on this matter. Even so, the Court finds 26.4 hours[13] excessive, especially because Troutman appears to have done most of the heavy lifting on the briefing for the motion. For this reason, the Court applies a 50% reduction to Becket's hours expended on the fee application.

**Unsuccessful Motion and "Tasks Without Results"**

Finally, Defendant contends that the Court should apply a 10% reduction to Troutman's fees to account for the hours spent on the motion for a preliminary injunction pending appeal in the Second Circuit. (Def. Opp. at 21.) "As the Second Circuit has noted, the standard for determining whether a party may recover fees for a motion is not whether the motion was unsuccessful, but whether it was frivolous." *Etna Products Co., Inc. v. Q Marketing Group, Ltd.*, No. 03-cv-3803(FM), 2005 WL 2254465, at *8 (S.D.N.Y. June 6, 2005) (citing *Seigal v. Merrick*, 619 F.2d 160, 164–65 (2d Cir. 1980)). The Court, though declining to rule on whether Plaintiffs' flawed motion denied by the Second Circuit on procedural grounds is frivolous, nonetheless applies the 10% reduction sought by Defendant based on Plaintiffs' noncompliance

---

[13] The Court does not include the 4.5 hours Mr. Rassbach spent "collating fees," which was already addressed *supra*.

with Fed. R. App. P. 8(a)(1)(C). *Agudath Israel of Am.*, 980 F.3d at 2235.

Defendant also requests that the Court deduct by half the time counsel spent on tasks that "did not lead to any outcome." (Def. Opp. at 22.) The Court grants a fifty percent reduction for the 9.7 hours[14] that Mr. Smith block billed for tasks that included preparing discovery requests because Plaintiffs determined the course of the litigation by seeking appeals and injunctive relief in lieu of seeking discovery. The Court also grants Plaintiffs' request for a fifty percent reduction of the 7.0 hours[15] Mr. Smith block billed for tasks that included drafting a letter to this Court on Plaintiffs' motion for injunctive relief pending appeal, which was never filed. Therefore, half of 16.7 hours, or 8.35 hours, billed by Mr. Smith should be removed, resulting in a reduction of Troutman's fees by $3,131.25.

---

[14] This includes: 3.3 hours Mr. Smith spent on tasks including "draft[ing] discovery requests" on October 12, 2020; 3.7 hours Mr. Smith spent on tasks including "draft[ing] requests for production of documents to Defendant" on October 13, 2020; and 2.7 hours Mr. Smith spent on tasks including "[d]raft[ing] Plaintiffs' First Set of Requests for Production of Documents to Defendant" on October 14, 2020. (Exhibit A to Schick Decl.)

[15] This includes: 4.9 hours Mr. Smith spent on tasks including "draft[ing] letter motion for injunctive relief pending appeal to district court" on October 19, 2020; and 2.1 hours Mr. Smith spent on tasks including "draft[ing] letter to district court" on October 20, 2020. (Exhibit A to Schick Decl.)

## III.  Fee Award Calculation

The Court's fee award calculations for Troutman and Becket, having factored in the reduced rates and the deductions discussed *supra*, are set forth below.

### Troutman's Fee Award

| Name | Rate | Hours | Total |
|------|------|-------|-------|
| Avi Schick (Partner) | $550 | 286.6 | $157,630.00 |
| Misha Tseytlin (Partner) | $500 | 77.7 | $38,850.00 |
| Alex W. Smith (Associate) | $375 | 521.5 | $195,562.50 |
| Mary Grace W. Metcalfe (Associate) | $375 | 15.3 | $5,737.50 |
| Sean T. H. Dutton (Associate) | $350 | 101.5 | $35,525.00 |
| Kevin M. LeRoy (Associate) | $350 | 14.5 | $5,075.00 |
| Christopher J. Kelleher (Associate) | $200 | 9.9 | $1,980.00 |
| Sarah Harris-Finkel (Paralegal) | $100 | 42.4 | $4,240.00 |
| | | | $444,600.00 |
| Deduction on Hours Spent Proofreading and Cite Checking | | | -6,790.00 |
| Deduction on Hours Spent Preparing Appendices | | | -$750.00 |
| Deduction for Tasks Without Results | | | -$3,131.25 |
| Percentage Cuts for (1) Block Billing and (2) noncompliance with Fed. R. App. P. | | | -15% |
| **TOTAL FEE AWARD** | | | **$368,839.44** |

**Becket's Fee Award**

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| **Requested Fees on the Merits** | | | |
| Mark Rienzi (President & CEO) | $600 | 34.3 | $20,580.00 |
| Eric Rassbach (VP & Senior Counsel) | $600 | 54.1 | $32,460.00 |
| Luke Goodrich (VP & Senior Counsel) | $525 | 12.9 | $6,772.50 |
| Lori Windham (Senior Counsel) | $500 | 10 | $5,000.00 |
| Daniel Blomberg (Senior Counsel) | $450 | 14.5 | $6,525.00 |
| Deduction for Top-Heavy Billing | | | -$450.00 |
| | | | $70,887.50 |
| **Requested Fees on Fee Application** | | | |
| Mark Rienzi | $600 | 13.1 | $7,860.00 |
| Eric Rassbach | $600 | 13.3 | $7,980.00 |
| Deduction on Hours Spent Collating Fees | | | -$2,250.00 |
| Percentage Reduction for Overbilling | | | -50% |
| | | | $6,795.00 |
| **TOTAL FEE AWARD** ($70,565.00 + $6,795.00) | | | **$77,682.50** |

## IV.   Reasonable Costs

Finally, Plaintiffs' attorneys have sought reimbursements for $13,420.70 in costs, "including expenses relating to court reporters, filings, research, and printing, incurred in connection with this action." (Schick Decl. ¶ 8.) Defendant does not challenge Plaintiffs' calculation or documentation of costs.

"Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable." *Centro*, 2019 WL 2870721, at *13. "Recoverable disbursements include such items as legal research, photocopying, postage, transportation, and filing fees." *HomeAway.com, Inc.*, 523 F. Supp. 3d at 589. However, the "fee applicant bears the burden of adequately documenting and itemizing the costs requested." *First*

*Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10-CV-696(KAM), 2013 WL 950573, at *10 (E.D.N.Y. Mar. 12, 2013) (citation omitted). Under Local Rule 54.1(a), the "bill of costs shall include an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred. Bills for the costs claimed shall be attached as exhibits." Local Rule 54.1(a).

Here, no documentation beyond an itemized list was provided. (Exhibit A to Schick Decl.) The Court therefore denies, without prejudice, the costs claimed by Plaintiffs for lack of documentation. If Plaintiffs choose to renew their motion for costs, they shall, by no later than December 13, 2021, file with this Court an affidavit that the costs claimed are allowable by law, are correctly stated, and were necessarily incurred, and shall attach bills for the costs claimed as exhibits pursuant to Local Rule 54.1(a).

37

## CONCLUSION

The court concludes that Plaintiffs' attorneys are entitled to $446,521.94 in fees, which includes $368,839.44 for Troutman and $77,682.50 for Becket. Plaintiffs' application for costs is denied without prejudice.


**SO ORDERED**

                                                      /s/
                                              Kiyo A. Matsumoto
                                              United States District Judge

DATED:  Brooklyn, New York
            December 6, 2021